Judge Steven C. Seeger
Magistrate Judge Jeffrey Cummings
PC 10
RANDOM

Rev. 09/17

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: |
|---|---|

| Name (under which you were convicted): Leroy Sullivan | Docket or Case No.: No.10 CR 2496 02 |
|---|---|

| Place of Confinement : | Prisoner No.: K 58721 |
|---|---|

Petitioner (include the name under which you were convicted)    Respondent (authorized person having custody of petitioner)

v.

Leroy Sullivan

The Attorney General of the State of: Illinois

**RECEIVED**

**PETITION**

OCT 18 2022 SMB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

Circuit Court of Cook County

(b) Criminal docket or case number (if you know): No 10 CR 2496 02

2.  (a) Date of the judgment of conviction (if you know): February 23, 2011

(b) Date of sentencing: February 23, 2011

3.  Length of sentence: 25 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☒ Yes  ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case: Attempted murder,

Home Invasion / With firearm

6.  (a) What was your plea? (Check one)

    ☐ (1)  Not guilty    ☐ (3)  Nolo contendere (no contest)

    ☒ (2)  Guilty    ☐ (4)  Insanity plea

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? I pled guilty to both charges

(c) If you went to trial, what kind of trial did you have? (Check one)

☐ Jury   ☐ Judge only

7.  Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes   ☒ No

8.  Did you appeal from the judgment of conviction?

☒ Yes   ☐ No

9.  If you did appeal, answer the following.

(a) Name of court: Circuit Court of Cook County

(b) Docket or case number (if you know): 10 CH 2496 02

(c) Result: Evidentiary hearing

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised: Due Process because of the conviction and sentence of my arressting officer Terrance O'Brien and ineffective assistance of counsel claim for failure to inform me of 85% being part of my sentence I never agreed to nor was I properly admonished that 85% truth in sentencing would be a term of my plea

(g) Did you seek further review by a higher state court?   ☒ Yes   ☐ No

If yes, answer the following:

(1) Name of court: Appellate Court of Illinois

(2) Docket or case number (if you know): 1-18-2438

(3) Result: I was denied the relief I requested the Appellate Court affirmed my conviction.

AO 241 (Rev. 10/17)

(4) Date of result (if you know)    September 14, 2021

(5) Citation to the case (if you know):

(6) Grounds raised:    Due Process because of the conviction and sentence of my arresting officer and ineffective assistance of counsel because I never agreed to nor was I admonished of 85% being a part of my plea

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☐ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know)

(4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☒ Yes    ☒ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:    Circuit Court of Cook County

(2) Docket or case number (if you know):    10 CR 2496 02

(3) Date of filing (if you know):

(4) Nature of the proceeding:    Post Conviction Evidentiary Hearing

(5) Grounds raised:    Due Process because of the conviction and sentence of my arressting officer Terrance O'Brien, and ineffective assistance of counsel because I was never told nor did I agree to 85% being part of my plea 85% was never mentioned in my plea bargain and I was never admonished that 85% would be a part of my sentence by the court.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☒ Yes    ☐ No

(7) Result:    I was denied the relief I requested

AO 241 (Rev. 09/17)

(8) Date of result (if you know):

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐ Yes    ☐ No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

AO 241 (Rev. 09-17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☐ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☒ Yes ☐ No

(2) Second petition: ☐ Yes ☐ No

(3) Third petition: ☐ Yes ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE: Due Process because of Officers Terrance O'Brien criminal conviction and sentence

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Schaumburg police officer Terrance O'Brien pled guilty to running a drug dealing operation and for forcing an informant to sell narcotics he and fellow officers confiscated.

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 341 (Rev. 09-17)

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ⊐ Yes     ⊐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

     ☒ Yes     ⊐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Post Conviction Petition

Name and location of the court where the motion or petition was filed:     Cook County Circuit

Court

Docket or case number (if you know):     10 CR 2496 02

Date of the court's decision:     November 9, 2018

Result (attach a copy of the court's opinion or order, if available)

(3) Did you receive a hearing on your motion or petition?     ☒ Yes     ⊐ No

(4) Did you appeal from the denial of your motion or petition?     ☒ Yes     ⊐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☒ Yes     ⊐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed.     Illinois Appellate Court

Docket or case number (if you know):     No. 1-18-2438

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241 (Rev. 09-17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:**     Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

I was never admonished by the Courts that 85% was part of my plea agreement, the courts never said the terms of my plea would be different from my co defendant who took his plea at the same time I took my plea 85% was never discussed. Supreme Court 402(b) say the court shall not accept a plea of guilty without first determing that the plea is voluntary. If the tendered plea is the result of a plea agreement the agreement shall be stated in open court. The court by questioning the defendant in open court shall confirm the terms of the plea.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)   **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)   **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:     Post Conviction Petition

Name and location of the court where the motion or petition was filed:     Cook County Circuit Court of Illinois

Docket or case number (if you know):     10 CR 2496

AO 241 (Rev. 09/17)

Date of the court's decision: November 1, 2018

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☒ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☒ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☒ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Appellate Court First Judicial District

Docket or case number (if you know): 1 - 18 - 2438

Date of the court's decision: September 14, 2021

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two :

**GROUND THREE:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

AO 241 (Rev. 09.17)

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c)    **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?       ⊐ Yes       ⊐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

⊐ Yes     ⊐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | |
|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ⊐ Yes | ⊐ No |
| (4) Did you appeal from the denial of your motion or petition? | ⊐ Yes | ⊐ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ⊐ Yes | ⊐ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

_____

_____

## GROUND FOUR:

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:

_____

_____

_____

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ❏ Yes     ❏ No

(2) If you did not raise this issue in your direct appeal, explain why:

_____

_____

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❏ Yes     ❏ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                            ⊐ Yes    ⊐ No

(4) Did you appeal from the denial of your motion or petition?                       ⊐ Yes    ⊐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ⊐ Yes    ⊐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241 (Rev. 09/17)

13. Please answer these additional questions about the petition you are filing:

    (a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☒ Yes ☐ No

        If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

    (b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

AO 241 (Rev. 09/17)

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

(b) At arraignment and plea: Kelly Christl

(c) At trial: Kelly Christl

(d) At sentencing: Kelly Christl

(e) On appeal:

(f) In any post-conviction proceeding: Ingrid Gill

(g) On appeal from any ruling against you in a post-conviction proceeding: Brian Josias

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  ☐ Yes  ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  ☐ Yes  ☐ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*



AO 241 (Rev. 09/17)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:   I would ask that the courts mandate the State courts to run my case/sentence at 50% which was what I agreed to or allow me to take back my plea.

or any other relief to which petitioner may be entitled.



Signature of Attorney (if any)



I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on                                     (month, date, year).



Executed (signed) on                                        (date)



Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

127921

In The

Supreme Court of Illinois

| People of the State of Illinois | ) Appellate Court, First Judicial District<br>) Case No. 1-18-2438 |
|---|---|
| Respondent ~~Appellee~~ | ) Circuit Court of Cook County, Illinois<br>) Case No. 10 CR 2496 ~~SS~~. |
| V. | ) |
| Leroy Sullivan | ) Honorable Mark W. Martin |
| Petitioner ~~Appellant~~ | ) Judge Presiding |

Petition For Leave to Appeal

Pursuant to Supreme Court Rule 315

Leroy Sullivan

# K.58721

Hill Corr. Center

P.O. Box

Galesburg, IL. 61402

FILED

NOV 2 3 2021

SUPREME COURT
CLERK

R 9-14-21

No RH

D 11-23-21

A 12-14-21

In The

Supreme Court of Illinois

People of the State of ) Petition for Leave to Appeal from the
Illinois ) Appellate Court of Illinois, First Judicial
) District, No. 1-18-2438
Respondant-Appellee, ) There heard on Appeal from the
) Circuit Court of Cook County, Illinois
v. ) No. 10 CR 2496 02.
Leroy Sullivan ) Honorable Mark W. Martin
Petitioner, Appellant ) Judge Presiding

Petition For Leave to Appeal

To The Honorable Justices of The Supreme Court of
The State of Illinois:

May It please the Court:

I.

Prayer For Leave To Appeal

Comes new, petitioner, Leroy Sullivan, pursuant to
Supreme Court Rule 315, and respectfully petitions this
court for leave to appeal the decision of the Appellate
Court, First Judicial District.

II.

Opinion and Proceedings Below

On September 14, 2021 the Appellate court affirmed
petitioner's sentence and conviction. No rehearing was
filed and petitioner leave to Appeal to the Illinois
Supreme Court.

## III.

### Point Relied Upon For Reversal

Supreme Court Rule 402, Pleas of Guilty or Stipulations Sufficient to Convict

(b) Determining whether the Plea is Voluntary.

The Court shall not accept a plea of guilty without first determining that the plea is voluntary. The Court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force, threats or any promises, apart from a plea agreement, were used to obtain the plea.

The petitioner was never admonished in open court or elsewhere that his plea agreement was to be served at 85% by his trial attorney or by the trial judge, because the record does not show affirmatively that defendant was sentenced to 85% no presumption exists which supports such an position. Credibility determinations are not relevant to resolve whether petitioner was properly admonished, provided notice, and given due process procedural guidelines since where the record is devoid no credibility assessment are dispositive. The absence of any determination by a judge automatically negates the sentence of 85% since it cannot be presumed.

Illinois Supreme Court Rule 402(b) provides in pertinent part "If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court.

Due Process requires that it be evident from the

record
that a defendants plea of guilty is entered with Full
knowledge of the consequences. Where, as here, the record
shows no evidence which affirmatively shows the
petitioner knew he would be subject to truth in sentencing
85%

Chief Justice Thomas (special concurrence in People v. Whitfield
noted that the requirement that a plea agreement be stated
in open court "prevents misunderstandings" as to the terms
of the agreement. It is efficient means of reducing what
is typically an oral understanding to a matter of the record.
It also insures that the agreement will be visible for
examination.

Chief Justice Thomas reasoned that: "It would be incongruous
to hold that the State is free to argue that the terms
of the agreement differed from those stated in open court,
while at the same time, preclude a defendant from challenging
a plea stated in open court on the basis that it differed
from an earlier oral understanding. Rule 402(b) takes the
guessing game out of discerning the parties oral understandings
to a matter of the record. This is analogous to a contract
setting where the parties oral negotiations are reduced to
a written contract, with all previous understandings merging into
the written contract.

Accordingly, Chief Justice Thomas agreed with the Whitfield
majority that there was no need for an evidentiary hearing
to ascertain the terms of the defendants bargain with the
State. Petition did not receive benefit of bargain of plea
agreement he thought he was accepting.

cont.           III

### Point Relied Upon for Reversal

The State would like the Court to believe that even though the record does not show that petitioner knew his plea would be served at 85%, which violates Due Process, that his current sentence is still better than the maximum sentence which he could've received, but that is the argument the argument is whether or not petitioner's constitutional and due process rights violated.

Trial Counsel kelly Christl testified under oath that she had no notes or record from the case because she no longer worked for the Cook County Public Defender's office, but somehow Trial Counsel Christl remembered telling petitioner that his plea would be at 85% even though petitioner had 2 (two) charges that carried different sentencing ranges 50% and 85%. Trial Counsel Christl also was allowed to offer expert forensic testimony about how to remove Gun Shot Residue from a person even though she isn't a Forensic Scientist. Ms. Christl offered testimony that petitioner could have been sweating, even though he was arrested in a snow bank, and that could be the reason petitioner did not test positive for Gun Shot Residue which is a unfounded opinion made by an attorney and not a scientist. *Exhibit A-2 Petitioner provides scientific information on how to remove GSR*

Petitioner contends that Ms. Christl's testimony is false and made up to protect herself from discipline because petitioner filed ineffective at assistance claims against

## III

ner.

Petitioner contends that he was unaware that his plea bargain was at 85% until almost 2 years in the custody of the Illinois Department of Corrections when he received a calculation paper which let him know the term of his sentence. Petitioner's Trial transcripts, Sentencing Transcripts, nor his Order of Commitment and Sentence to Illinois Dept. of Correction papers ever mention 85% being a part of petition's sentence.

*Exhibit B copies of trial transcript, sentencing transcripts, order of Commitment and Sentence to IDOC.*

In the State's motion to Dismiss Amended Supplemental Petition for Post Conviction Relief dated July 22nd, 2016 page H-8 the State claims that petitioner claim in a affidavit that he took a plea for 25 years at 50% that was changed to 85% after he accepted it, which the State says was contradicted by the record, Honorable Judge Mark W. Martin asks if petitioner was admonished that his sentence was at 85%, the State answers "NO", Judge Martin ask the State was 85% discussed during the plea, the State answers "NO", when Judge Martin asks the State about 85% being part of the record which the State previously stated it was, the State could not find 85% being part of petitioner's plea agreement anywhere H-8 to H-11 of the State's motion to Dismiss Amended Supplemental Petition for Post Conviction Relief shows how the State tried to misinform Judge Martin of the facts regarding petitioner's plea agreement. Exhibit C copy of Appellate Court Order No. 1-18-2438 pages H-8 thru H-11 #33

cont.

III

Point Relied Upon for Reversal

The State also argues that because the sentence
petitioner is currently serving is at the lower end of the
sentencing range that the Courts should ignore the fact
that petitioner's constitutional rights were violated because
petitioner wasn't properly admonished of the terms of his
plea which violates petitioner's due process and Supreme Court
Rule (402)(b).

*Exhibit D copy of Supreme Court Rule 402.*

Petitioner contends he told trial counsel that he was
tortured into signing a written confession. Trial counsel
Kelly Christl said petitioner's had a triable case pertaining
to the attempted murder charge at petitioner's evidentiary
hearing, petitioner contends that he was never told by trial
counsel that his co-defendant and not petitioner tested
positive for Gun Shot Residue or that the Illinois
State Police Forensic Scientist ruled petitioner out as
having fired a firearm and had petitioner known that
fact he would've never taken the plea bargain.
Exhibit F copy of Appellate Court order No. 1-18-2438 page 5-6
paragraph #17

IV.

## Statement of Facts

Petitioner Leroy Sullivan was charged with attempted first degree murder of a peace officer, two counts of home invasion, two counts of aggravated unlawful restraint, unlawful use of a weapon by a felon, and aggravated discharge of a firearm arising from a incident which occured on January 6, 2010. On February 23, 2011 petitioner accepted a plea offer and pled guilty to attempted murder and home invasion for a agreed upon 25 year sentence.

On October 2, 2013 petitioner filed a motion for Trial transcripts and Common Law Record, motion for appointment of Counsel, and motion to proceed in Forma Pauperis and request free transcripts which motions were denied on October 8, 2013.

On October 17, 2013 petitioner filed a pro se motion to reconsider the denial, indicating in his motion that he intended to challenge his guilty plea based on the indictment of an officer connected to petitioner's case and information he discussed off record with counsel.

On May 22, 2014 petitioner filed a pro se post conviction petition alleging, inter alia, that there was newly discovered evidence in his case and that defense counsel was ineffective. Petitioner was appointed counsel, who filed a Amended Supplemental Petition for Post-Conviction Relief, and 651(c) certificate on August 14, 2015. The People filed a motion to dismiss, which the court denied as to petitioners claim of newly discovered evidence and ineffective assistance of counsel and advanced those issues for third-stage proceedings.

On April 20, 2017, while third-stage proceedings were being held, petitioner filed a Petition for Post-Conviction Relief Freestanding Claim of Actual Innocence, which the court determined was an →

an amendment to the post conviction petition.

On November 9, 2018 the court denied petitioner's Amended Post Conviction Petition and Petition for Post Conviction Relief Freestanding Claim of Actual Innocence.

Petitioner Appeals that decision.

V.

## Argument

Petitioner contends that on February 23, 2011 he and his co-defendant Kendall Moore both entered guilty pleas in Judge Hanlon court room. Petitioner and his co-defendant were both sentence in the same courtroom at the same time upon receiving their sentences neither defendant was ever admonished of 50% or 85% being a factor in either pleas. Defendant's sentence was applied at 85% but his co-defendant Kendall Moore sentence was applied at 50% even though the Judge never admonished either defendant.

Due Process requires that it be evident from the record that a defendant's plea of guilty is entered with full knowledge of the consequences. Where, as here, the record shows no evidence which affirmatively shows that petitioner knew that he would be subject to truth in sentencing 85%.

The Department of Corrections is an agency of the executive branch by what authority did the DOC change or apply 85% and not 50%. There was no judicial directive sought or received yet DOC took it upon itself to apply 85%, because the record does not show affirmatively that defendant was sentenced pursuant 85% no presumption exists which supports such an position. Credibility determinations are not relevant to resolve whether the defendant was properly admonished, provided notice, and given due process procedural guidelines, since where the record is devoid no credibility assessments are dispositive.

That under the Separation of Powers principle's

the application of 85% is void violating article 2, section 1 of the Illinois Constitution.

The absence of any determination by a Judge automatically negates the sentence of 85% since it can not be presumed.

VI.

Conclusion

Wherefore, your Petitioner respectfully request this Honorable court to grant his petition for leave to appeal.

Respectfully submitted,

Leroy Sullivan

Pro se

Subscribed and sworn to before me this 17 day of November 2021

Daneen L. Richardson

notary

Leroy Sullivan

#K-58721

P.O. Box 1700

Galesburg, IL

6402

DANEEN L. RICHARDSON
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Jul 05, 2023

Certificate of Compliance

I, Leroy Sullivan, certify that this petition conforms to the requirements of Supreme Court Rule 341(a). The length of this petition, excluding pages containing Rule 341(d) cover, the Rule 341(c) certificate of compliance, and those matters to be appended to the petition under Rule 315(c), is 11 pages.

RECEIVED

NOV 23 2021

CLERK
SUPREME COURT

In The

Supreme Court of Illinois

| People of the State of Illinois | ) Appellate Court, First Judicial District |
| | ) Case No. 1-18-2438 |
| Respondant-Appellee | ) Circuit Court of Cook County, Illinois |
| | ) Case No. 10 CR 2496 02. |
| v. | |
| Leroy Sullivan | ) Honorable Mark W. Mark |
| Petitioner-Appellant | ) Judge Presiding |

Proof of Service / Notice of Filing

To: Honorable Carolyn Tatt Grosboll, Clerk of the Supreme Court, Supreme Court Building, Springfield, IL. 62701

To: Kwame Baoul, Attorney General, 100 W. Randolph St., 12th Floor, Chicago, IL. 60601

To: Ms. Kimberly M. Foxx, State's Attorney, Cook County, State's Attorney Office, 300 Daley Center, Chicago, IL. 60602

You are hereby notified that on _____, I submitted for filing #4 copies of the Petitioner's petition to the Office of the Clerk of the Supreme Court of Illinois, 200 East Capitol Avenue, Springfield IL. 62701, and #1 copies to each of the above-name opposing counsels by depositing in the U.S. mail at Hill. Corr. Center.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set for in this instrument are true and correct.

Subscribed and sworn to before me

Date: 11/17/21

Notary: Daneen Richardson

DANEEN L. RICHARDSON
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires Jul 05, 2023

Leroy Sullivan
P.O. Box 1700
Galesburg, IL. 61402

## Appendix

1. Court Order from Appellate Court
2. Petition for leave to Appeal
3. Ex. A, A1, B, C (trial transcript is missing because access to legal boxes are unavailable due to no permanant law clerk here at Hill C.C., Ex. D and F



**NOTICE**
The text of this order may be changed or corrected prior to the time for filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (1st) 182438-U

No. 1-18-2438

September 14, 2021

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, ℛ𝒜 | ) Cook County. |
| | ) |
| v. | ) No. 10 CR 2496 |
| | ) |
| LEROY SULLIVAN, | ) Honorable |
| | ) Marc W. Martin, |
| Defendant-Appellant 𝒫𝒜 | ) Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

### ORDER

¶ 1     *Held*: The circuit court's denial of postconviction relief following an evidentiary hearing was not against the manifest weight of the evidence.

¶ 2     Defendant Leroy Sullivan appeals from the circuit court's denial of relief under the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)), following an evidentiary

hearing. On appeal, defendant contends that the circuit court erred when his guilty plea was not

No. 1-18-2438

voluntary and knowing due to plea counsel's erroneous advice regarding the amount of good time credit he would receive on his 25-year sentence for attempt murder of a peace officer. We affirm.

¶ 3       Following his January 6, 2010 arrest, defendant was charged by indictment with attempt murder of a peace officer, aggravated discharge of a firearm, unlawful use of a weapon by a felon, and two counts each of home invasion and aggravated unlawful restraint.

¶ 4       On February 23, 2011, defendant entered guilty pleas to attempt first degree murder of a peace officer (720 ILCS 5/8-4(a) (West 2008); 720 ILCS 5/9-1(a)(1) (West 2008)) and home invasion (720 ILCS 5/12-11(a)(3) (West 2008)), in exchange for two concurrent 25-year prison terms.

¶ 5       At the plea hearing, the trial court admonished defendant that he was pleading guilty to attempt first degree murder of a peace officer, a Class X felony with a sentencing range of 20 to 80 years in prison, and to home invasion, a Class X felony with a sentencing range of 21 to 45 years in prison. The court further stated that due to his criminal background, defendant was eligible for an extended-term sentence.

¶ 6       The State presented the factual basis. On January 6, 2010, defendant, Kendall Moore, and Lorenzo Vaughen went to the Schaumburg home of Moore's marijuana dealer to rob him. Defendant and Vaughen entered the house with duct tape, extension cords, and a firearm. They tied up a man and woman and searched the house for marijuana and money. The female victim called 911, and police officers, including Officer Larry Marks, responded. Defendant and Vaughen fled. During the subsequent pursuit, defendant shot at Marks. After defendant was arrested, he was identified by the victims and Marks, and gave an inculpatory statement. The court accepted the

No. 1-18-2438

factual basis and sentenced defendant to two concurrent 25-year prison terms. Defendant did not move to withdraw his plea or file a direct appeal.

¶ 7    In August 2013, defendant filed *pro se* motions for transcripts and appointment of counsel, which stated that "17 years" remained on his sentence and that he was "addressing" his "issues" under the Act, and attached an affidavit wherein he averred that police officers involved in his case were corrupt. The court denied the motion and defendant appealed. On June 24, 2014, the appeal was dismissed for want of prosecution. See *People v. Sullivan*, No 1-13-3826 (2014) (dispositional order).

¶ 8    On May 22, 2014, defendant filed a *pro se* petition for relief under the Act alleging, *inter alia*, that he was "falsely" arrested by Schaumburg police officer Terrence O'Brien, subjected to "selective and vindictive" prosecution, and denied the effective assistance of counsel because plea counsel "misinformed" him about the amount of time he must serve before parole. Specifically, the petition alleged that plea counsel failed to inform defendant of the State's offer of 25 years in prison with day-for-day credit in exchange for a plea of guilty to home invasion. The petition also noted that retained counsel withdrew from representing defendant four days before the "filing" of the petition. Attached to the petition were, in pertinent part, the affidavits of defendant and his mother, Sherri Sullivan.[1]

¶ 9    Defendant averred that after he and Vaughen purchased marijuana at a house in Schaumburg, he saw police officers at the door and ran away. He was arrested, transported to a police station, and given a gunshot residue (GSR) test that did not test positive. Defendant was

---

[1] Because defendant and Sherri Sullivan share the same last name, we refer to Sherri by her first name.

- 3 -

No. 1-18-2438

confused because "none of us" had a firearm. Then, he was taken to a garage, told that he fired at the police, and punched and kicked by officers when he "denied the allegation." Defendant denied making a statement.

¶ 10   Defendant asserted that he pled guilty in exchange for a sentence of 25 years in prison to be served at 50%, but that the agreement was changed after he "took it" such that he was required to serve 85% of his sentence. Defendant finally averred that he did not have a "fair chance" and was "blatantly set up." According to defendant, the arresting officer in his case, O'Brien, had been charged with robbing drug dealers and selling drugs, which "exposed" the Schaumburg Police Department's corruption.

¶ 11   Sherri averred that plea counsel told her that if defendant entered a guilty plea, the court agreed to sentence him to 25 years in prison and he would serve 50% of that sentence. However, if defendant had a jury trial the "deal [was] off the table." Sherri advised defendant to go to trial. After plea counsel said Rolling Meadows jurors were elderly and prejudiced and defendant would serve 25 years in prison if convicted, defendant "immediately" entered a guilty plea.

¶ 12   The petition was docketed and postconviction counsel appointed. On August 14, 2015, postconviction counsel filed an amended supplemental petition and certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013).

¶ 13   The amended supplemental petition alleged that defendant was deprived of his constitutional rights when O'Brien, who arrested him, was later convicted of "various" federal felonies, defendant was subjected to "selective prosecution" when he was treated disparately from his co-offenders, and plea counsel misinformed him as to how much of his prison sentence he must serve before becoming eligible for parole. Specifically, the amended supplemental petition alleged



*EX. F*

No. 1-18-2438

that defendant pled guilty because plea counsel stated he would be eligible for day-for-day credit, and that he would not have entered a guilty plea had he known he was ineligible for day-for-day credit. The State filed a motion to dismiss, and on July 22, 2016, the circuit court heard argument on the motion.

¶ 14  In partially granting the motion to dismiss, the court noted that the *pro se* petition was untimely, but that defendant was not culpably negligent for filing the petition 81 days late when the record revealed that defendant originally retained a private attorney whose "initial solicitation" to file a postconviction petition and lawsuit against the police was within the statute of limitations, but counsel later withdrew from representation. The court dismissed defendant's claim for vindictive and selective prosecution and set the claims regarding O'Brien and the ineffective assistance of plea counsel for an evidentiary hearing.

¶ 15  Postconviction counsel then filed a freestanding postconviction petition raising a claim of actual innocence based upon the negative GSR test, arguing that this result undermined the voluntary nature of defendant's plea and corroborated his claim that O'Brien arrested innocent people.

¶ 16  The matter proceeded to an evidentiary hearing on August 4, 2017. At the hearing, postconviction counsel characterized the petition raising a free-standing claim of actual innocence as a "successive" petition and the court agreed to consider the claim.

¶ 17  Defendant testified that he was arrested on January 6, 2010, by Schaumburg police officers and charged with attempt murder of a police officer. Assistant public defender Kelly Christl was appointed to represent him. Prior to the entry of his guilty plea, Christl told him that no residue was recovered from the GSR test performed on him. However, she did not tell him that Vaughen's

No. 1-18-2438

GSR test was positive, and defendant would not have entered a guilty plea had he known this. Although defendant and plea counsel discussed the police reports, she did not tell him a police officer stated that defendant admitted to discharging a firearm and he did not know the charges against Vaughen. After defendant entered a guilty plea, he learned that O'Brien, the arresting officer in his case, was arrested for misconduct. Had defendant known that O'Brien was engaged in misconduct, he would not have pled guilty.

¶ 18    When counsel explained the terms of the State's offer, she stated that "the Judge" would "give" defendant 80 years if he were found guilty after trial, but that "copping out" to 25 years at 50% was defendant's "best option." Although defendant told counsel he did not have a firearm, she stated that based on his background he would be charged with attempt murder "anyway." Defendant explained that in 1996 he was arrested for attempt murder after "fleeing a party with some guys that got run over by [his] car," went to trial, and was sentenced to 18 years in prison to be served at "50 percent." He had no reason to doubt Christl when she said he would be eligible for day-for-day credit. Defendant would not have entered a guilty plea had he known he would serve 85% of his sentence.

¶ 19    During cross-examination, defendant reiterated that Christl never told him the police said he made a statement about a firearm. Although they discussed the charges against him, Christl "never *** went through" the police reports. He denied speaking to the police or an assistant State's Attorney about the events of January 6, 2010. When defendant asked about the evidence against him, Christl stated she would secure a plea because the trial court wanted to sentence him to 80 years, as this was a "high profile" case where a firearm was discharged at a police officer.

- 6 -

No. 1-18-2438

¶ 20    Defendant acknowledged he was with Vaughen and Moore on January 6, 2010, but denied telling the police that he accompanied Moore to "talk" to someone who "shorted" Moore on marijuana. He identified a five-page statement dated January 8, 2010, which bore his signature, but denied making the statement. Defendant denied stating that he and the co-offenders went to a "white guy's" house in Schaumburg to take marijuana after Moore was not given the "full" amount, that Vaughen had a firearm, and that Vaughen instructed defendant to tie up a woman and asked the man for the location of the "weed." Defendant further denied stating that when the doorbell rang, he opened the door, saw two police officers, and closed the door. He finally denied stating that he located the firearm on a bathroom sink, grabbed it, and then ran outside where he stumbled and caused the firearm to discharge. Counsel never told defendant about this statement or that witnesses identified him in a lineup.

¶ 21    During redirect, defendant testified that when officers questioned him, he requested an attorney. He was then taken to a garage where he was hit and kicked by police officers including O'Brien. Defendant was scared and would have signed "anything." He told Christl that he never discharged a firearm. Defendant had no reason to doubt counsel's statement that he would receive day-for-day credit. During recross, defendant testified he was unaware that Christl filed a motion to suppress statements alleging his statement was involuntary and that he was beaten "about the head and body."

¶ 22    Sherri testified that she spoke with Christl about defendant's case "all the time." However, they did not discuss a motion to suppress statements. Christl told her it would be in defendant's best interest to enter a guilty plea, and that the trial court would offer defendant a 25-year sentence to be served at 50%. On February 23, 2011, Christl told Sherri that if defendant rejected the offer

No. 1-18-2438

it would be "off the table," and if he were found guilty after trial, he would serve 85% of his sentence. Sullivan was "upset" because she advised defendant to go to trial.

¶ 23   During cross-examination, Sherri acknowledged that Christl was not her attorney and did not discuss "a lot" with her. She was not present for conversations between Christl and defendant, learned of the offer on the day that defendant entered his plea, and did not speak to him that day. Sherri was unaware that defendant made an inculpatory statement and was identified by multiple witnesses.

¶ 24   Fallon Wells, defendant's former fiancée, testified that she accompanied Sherri to every court date and was present at the plea hearing. After defendant pled guilty, Christl told them that defendant would receive day-for-day credit on his sentence and would have received a longer sentence due to his criminal background had he gone to trial.

¶ 25   During cross-examination, Wells acknowledged not knowing that defendant had a conference with the court prior to entering his guilty plea or that the State made an offer. She was not present for conversations between defendant and Christl. Wells told defendant not to plead guilty, but Christl advised "otherwise."

¶ 26   O'Brien testified that he previously entered guilty pleas to armed violence with a weapon and "manual delivery of a controlled substance," and was in prison at the time of the hearing.[2] In January 2010, O'Brien was a Schaumburg police officer. He did not remember arresting defendant. After reviewing an arrest report he authored, O'Brien testified that when he arrested defendant, defendant stated, "he was with his cousin Kendall at some white boy's house to buy some kush."

---

[2] Although the report of proceedings refers to O'Brien's conviction as "manual delivery of a controlled substance," the conviction at issue was likely manufacture or delivery of a controlled substance.

No. 1-18-2438

He did not recall interrogating defendant or being in a garage with defendant. He denied hitting defendant or using intimidation and physical force against defendant.

¶ 27    During cross-examination, O'Brien testified that defendant was observed in a snowbank and then taken into custody. He had no contact with defendant at the police station.

¶ 28    The defense then called Kelly Christl, who represented defendant in the plea proceedings. The circuit court asked the State if it objected to defendant "calling [the State's] witness," and the State replied that it did object.

¶ 29    Christl testified that she worked for the Office of the Cook County Public Defender between 2000 and 2014, and reached the "highest grade *** achieve[able] as a line attorney." She represented defendant after private counsel withdrew. Before appearing at the evidentiary hearing, Christl reviewed the postconviction filings and attached exhibits, and the transcript from the plea hearing. She also reached out to her former office several times asking if her files and notes could be located, but she never heard back. She did not have any materials outside of the "official" record.

¶ 30    Prior to the date of the plea, Christl spoke to defendant and reviewed his criminal history. She knew he had a prior Class X conviction but did not remember the offense, whether defendant had other convictions, or if he had previously received day-for-day sentence credit. Christl did not state on the record at the plea hearing that defendant would receive day-for-day credit on his sentence.

¶ 31    During cross-examination, Christl testified that she had concerns about violating attorney-client privilege and would feel more comfortable if the court ordered her to answer questions. The court then directed Christl to answer questions regarding her representation of defendant. Christl

- 9 -

No. 1-18-2438

testified that she discussed the police reports, defendant's inculpatory statement, and witness identifications with defendant. After reviewing defendant's statement with him, she filed a motion to suppress statements. Christl discussed the charges, including attempt murder of a peace officer, with defendant. She explained to defendant that the applicable sentencing range for attempt murder of a peace officer was 20 to 80 years in prison to be served at 85%. She also discussed the applicable sentencing range for home invasion with a firearm, and that any sentence would be eligible for day-for-day credit. She told defendant that his prior criminal record made him eligible for an extended-term sentence.

¶ 32    Christl's objective when entering plea negotiations was the dismissal of the attempt murder of a peace officer charge and a guilty plea to home invasion. The motion to suppress statements alleged, based on information received from defendant, that he was not informed that he had the right to remain silent and was beaten by police officers. Although Christl did not have an independent recollection of a conversation with defendant regarding the warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966), she would not otherwise have raised that claim. Because defendant entered a guilty plea there was no hearing on the motion. Prior to the plea, Christl filed a motion for severance because the co-offenders gave statements implicating defendant. Christl denied telling Sherri that defendant would serve his sentence for attempt murder of a peace officer at 50%, and telling defendant he would receive the same sentence as the co-offenders.

¶ 33    During redirect, Christl testified she believed defendant had a "triable case" on the attempt murder of a peace officer charge based on "issues" with defendant's intent and how the firearm was discharged. However, she was concerned about defendant's exposure on the other charges at trial. She remembered receiving the GSR reports which excluded defendant and telling defendant

- 10 -

No. 1-18-2438

that a co-offender tested positive for GSR. Christl did not remember that defendant had three prior attempt murder convictions and had received day-for-day credit on those sentences. She was "sure" she discussed defendant's background with him. She did not state on the record the percentage of his sentence that defendant would have to serve. Christl remembered speaking to Sherri several times and stating the objective was the dismissal of the attempt murder of a peace officer charge, but did not remember discussing the State's offer with her or speaking to her the day of the plea.

¶ 34    During recross, Christl testified that she explained to defendant that it was his choice to plead guilty or not. Although she advised defendant about his options, she did not tell him to accept the plea. She did not remember if defendant asked questions about the plea, but if she had any concerns about his ability to understand the plea, she would not have proceeded. Although defendant was not present at the Supreme Court Rule 402 (eff. July 1, 1997) conference, following the conference she relayed the offer of 25 years on the charge of attempt murder of a peace officer to be served at 85%. Defendant asked for time to consider the offer and the case was continued.

¶ 35    On re-redirect, Christl testified that she and defendant discussed that it was important to obtain a plea in which the charge of attempt murder of a peace office was dismissed so that he could plead guilty to a "50% charge." She planned to rely on the facts that no GSR was found on defendant and that defendant said the firearm discharged when he slipped and fell.

¶ 36    The State then presented the testimony of Schaumburg police sergeant Patrick Quane, who testified that on January 6, 2010, he was a detective and during his investigation learned that defendant was identified by an officer as the shooter. He met defendant at a police station. Quane took defendant to the garage so that defendant could smoke, but denied kicking or striking

- 11 -

No. 1-18-2438

defendant. Quane was present when defendant gave a statement and at no time did defendant say that a police officer struck or kicked him. During cross-examination, Quane acknowledged not knowing what happened to defendant prior to being assigned to the case, but asserted he would have observed injuries had defendant been beaten.

¶ 37    At the close of testimony, the court and parties agreed to treat the petition raising a claim of actual innocence as an amendment to the amended supplemental petition. The court then heard argument.

¶ 38    On November 9, 2018, the circuit court denied defendant postconviction relief. In pertinent part, the court noted that defendant acknowledged in motions filed in 2013 that 17 years remained on his sentence, and at that time he did not raise "any discrepancy in good time" credit. Moreover, defendant, Sherri, and Wells testified that counsel stated defendant would receive day-for-day credit on his sentence, but Christl "recollected" telling defendant that a sentence for the offense of attempt first degree murder of a peace officer would be served at 85%. The court found Christl's testimony credible and further noted she had "no motivation not to advise" defendant about good time credit. The court agreed that it might have been better practice to make a statement about good time credit on the record at the plea hearing, but noted that no authority mandated such a statement. The court further stated that the applicable sentencing range for attempt murder of a peace officer was 20 to 80 years in prison, defendant's criminal background subjected him to an extended-term sentence, and counsel was concerned that defendant could be sentenced to 80 years in prison following a guilty finding at trial. The court concluded that defendant had not proven by a preponderance of the evidence that the decision to reject the plea would have been "rational."

No. 1-18-2438

¶ 39    On appeal, defendant contends that the circuit court erred in denying him postconviction relief when he established that his plea was unknowing and involuntary because it was based upon plea counsel's erroneous advice that he would only have to serve 50% of his sentence.

¶ 40    The Act provides a three-stage process for defendants who allege a substantial deprivation of their constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. When a petition advances to the third stage of postconviction proceedings, the circuit court conducts an evidentiary hearing (*People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006)), where "the burden is on the defendant to make a substantial showing of a deprivation of constitutional rights" (*People v Coleman*, 206 Ill. 2d 261, 277 (2002)). The circuit court, as the finder of fact at the hearing, makes credibility determinations and weighs the evidence. *People v. Reed*, 2020 IL 124940, ¶ 51.

¶ 41    We review the circuit court's ruling following a third stage evidentiary hearing for manifest error. *Id.* Manifest error is an error that is "clearly evident, plain, and indisputable." (Internal quotation marks and citations omitted.) *Id.* However, with claims of ineffective assistance of counsel, we apply "a bifurcated standard of review, wherein we defer to the *** court's findings of fact unless they are against the manifest weight of the evidence but make a *de novo* assessment of the ultimate legal issue of whether counsel's actions support an ineffective assistance claim." *People v. Nowicki*, 385 Ill. App. 3d 53, 81 (2008).

¶ 42    A claim of ineffective assistance of counsel presented in a postconviction petition is judged under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Id.* at 687-88. To demonstrate deficient performance, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To demonstrate

No. 1-18-2438

prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A defendant's failure to establish either prong is fatal to his claim. *People v. Easley*, 192 Ill. 2d 307, 318 (2000).

¶ 43    The constitutional right to the effective assistance of counsel extends to plea negotiations. *Missouri v. Frye*, 566 U.S. 134, 144 (2012); *People v. La Pointe*, 2015 IL App (2d) 130451, ¶ 71. To establish prejudice in the plea context a defendant must show that " 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *People v. Brown*, 2017 IL 121681, ¶ 26 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Claims related to a defendant's "understanding of the consequences of pleading guilty," as opposed to matters of trial strategy, do not require a showing that he would have been "better off going to trial" by raising a claim of actual innocence or a viable defense. (Internal quotation marks omitted.) *Id.* ¶ 34 (citing *Lee v. United States*, 582 U.S. at __, 137 S. Ct. 1958, 1965-66 (2017)). Instead, a defendant need only show that the decision to reject a plea and go to trial would be " 'rational under the circumstances.' " *Lee*, 582 U.S. at __, 137 S. Ct. at 1968 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 44    In the case at bar, whether defendant made a substantial showing of the deficient performance and prejudice components of the ineffective assistance test ultimately depended on a credibility contest between the testimony of defendant and his witnesses, and Christl.

¶ 45    During the hearing, defendant testified that Christl told him that he would likely be sentenced to 80 years if found guilty after trial and that his "best option" was "copping out" to 25 years at 50%. He further testified that he had no reason to doubt Christl when she said he would

- 14 -

No. 1-18-2438

be eligible for day-for-day credit, and that he would not have entered a guilty plea had he known he would be required to serve 85% of his sentence. While defendant's mother and former fiancée testified consistently with defendant that Christl stated that defendant would serve his sentence at 50%, they both acknowledged not being present for conversations between defendant and Christl.

¶ 46    Christl, on the other hand, testified that she discussed the charges with defendant and explained to him that the applicable sentencing range for attempt murder of a peace officer was between 20 and 80 years in prison to be served at 85%, but that the sentence for home invasion would be eligible for day-for-day credit. Her goal in plea negotiations, which she discussed with defendant, was the dismissal of the attempt murder of a peace officer charge and a guilty plea to home invasion, so that defendant could plead guilty to a "50% charge." She further testified that after the Rule 402 conference, she told defendant about the State's offer and the case was continued so that he could consider it. Although she discussed the options with defendant, she did not tell him to plead guilty. Christl also noted that although she believed defendant had a "triable case" on the attempt murder of a peace officer charge, she was concerned about defendant's exposure on the other charges at trial and that defendant's criminal background made him eligible for an extended-term sentence.

¶ 47    These competing versions of events—that Christl entered plea negotiations hoping to obtain a guilty plea to a charge that was eligible for day-for-day credit but was unsuccessful, as opposed to defendant's assertion that Christl told him he would be eligible for day-for-day credit and that he would have rejected the plea had he known he was required to serve 85% of his sentence—presented the circuit court with a credibility determination. Ultimately, the court credited Christl's testimony that she told defendant she would try to negotiate a plea where he

No. 1-18-2438

would plead guilty to an offense that was eligible for day-for-day sentencing credit but was ultimately unsuccessful, and relayed to defendant that the State's offer was 25 years on attempt murder of a peace officer to be served at 85%. It was for the circuit court, as finder of fact at the hearing, to make credibility determinations and weigh the evidence. *Reed*, 2020 IL 124940, ¶ 51. After reviewing the testimony on both sides of this credibility determination, we find that the court's finding was not manifestly erroneous, as the opposite conclusion is not clearly apparent. See *People v. Coleman*, 2013 IL 113307, ¶ 98 ("a decision is manifestly erroneous when the opposite conclusion is clearly evident").

¶ 48    Even if this court were to agree with defendant that counsel's performance was somehow deficient, we are unpersuaded that rejecting the plea and proceeding to trial would have been the rational choice in this case. See *Padilla*, 559 U.S. at 372 (to establish prejudice, a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

¶ 49    Here, defendant was charged with two Class X offenses. Generally, the sentencing range for a Class X felony is 6 to 30 years in prison and an extended-term sentence is 30 to 80 years in prison. See 730 ILCS 5/5-4.5-25(a) (West 2008). As charged in this case, however, attempt murder of a peace officer had an applicable sentencing range of 20 to 80 years in prison (720 ILCS 5/8-4(c)(1)(A) (West 2008); 720 ILCS 5/9-1(a)(1) (West 2008)) and was subject to a 20-year sentencing enhancement because a firearm was discharged during the commission of the offense (720 ILCS 5/8-4(c)(1)(C) (West 2008)). Home invasion, as charged in this case, had an applicable sentencing range of 21 to 75 years in prison. 720 ILCS 5/12-11(a)(3), (c) (West 2008).

No. 1-18-2438

¶ 50    While Christl testified that she thought defendant had a good case regarding the charge of attempt murder of a peace officer because of how the firearm was discharged, and had filed motions to suppress statements and for severance, the fact remained that defendant was identified by multiple witnesses as one of the offenders, made an inculpatory statement, and had a criminal history that included a prior Class X conviction. Facing up to 80 years in prison for the offense of attempt first degree murder a peace officer plus the 20-year sentencing enhancement for discharging a firearm during the offense to be served at 85%, it is difficult to believe that a rational defendant would reject a 25-year plea offer that excluded the enhancement, thereby securing 15 fewer years in prison than the statutory minimum applicable sentence for that offense with the enhancement included. *Padilla*, 559 U.S. at 372. Because defendant has not shown a reasonable probability that he would have rejected the plea and proceeded to trial absent counsel's allegedly deficient advice concerning how much of his sentence he must serve, he cannot demonstrate prejudice, and his ineffective assistance claim must fail. See *Easley*, 192 Ill. 2d at 318 (the failure to establish either prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim). Accordingly, the circuit court did not err in denying defendant postconviction relief.

¶ 51    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 52    Affirmed.

Chie   Istice THOMAS, specially concurring:

Ex. A-1

I agree with the majority that defendant made a substantial showing that his constitutional rights were violated because he did not receive the benefit of his bargain and further that the appropriate remedy for such a claim, under the circumstances, would be to modify the defendant's sentence. I also agree with the majority's conclusion that the cause need not be remanded for an evidentiary hearing to test defendant's claim that he failed to receive the benefit of his bargain. I write separately because I reach the conclusion that an evidentiary hearing is not required for different reasons than the majority.

The purpose of a postconviction proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been adjudicated previously on direct appeal. *People v. Morgan*, 187 Ill.2d 500, 528, 241 Ill.Dec. 552, 719 N.E.2d 681 (1999). The Post-Conviction Hearing Act provides the mechanism by which those under a criminal sentence can assert that their convictions were the result of a substantial denial of their constitutional rights. *People v. Coleman*, 183 Ill.2d 366, 378-79, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998). The Act provides for various, distinct stages to conduct this inquiry. First, a defendant commences proceedings under the Act by the filing of a petition, which must clearly set forth the respects in which the defendant's rights were violated. 725 ILCS 5/122-2 (West 2002). The Act requires that a defendant attach affidavits, records, or other evidence supporting the petition's allegations. 725 ILCS 5/122-2 (West 2002). Thereafter, if the defendant is under a sentence of imprisonment, the circuit court is to examine the petition to determine if it is frivolous or patently without merit; if it is determined to be frivolous or patently without merit, the court is authorized to dismiss the petition. 725 ILCS 5/122-2.1(a) (West 2002). If the petition is not dismissed at this stage, it is docketed for further proceedings in accordance with sections 122-4 through 122-6 of *676 the Act. 725 ILCS 5/122-2.1(b) (West 2002). Under section 122-5 of the Act, the State then has an opportunity to file a motion to dismiss or an answer. 725 ILCS 5/122-5 (West 2002). If a motion to dismiss is filed and then denied, the State must then file an answer within 20 days after such denial. 725 ILCS 5/122-5 (West 2002). The court may then receive proof by affidavits, depositions, oral testimony, or other evidence. 725 ILCS 5/122-6 (West 2002). In its discretion, the court may order the defendant to be brought before the court for the hearing. 725 ILCS 5/122-6 (West 2002). If the court finds in favor of the defendant, it is required to enter an appropriate order with respect to the judgment or sentence in the former proceedings. 725 ILCS 5/122-6 (West 2002).

In the present case, the State's motion to dismiss was granted without comment, so it never actually had an opportunity to file an answer denying the factual allegations of defendant's petition. While it is true that all well-pleaded facts in a defendant's petition and in the accompanying affidavits are taken as true, this is only for the purpose of making a substantial showing that constitutional rights have been violated so that a defendant can proceed to an evidentiary hearing on his allegations. *Morgan*, 187 Ill.2d at 528, 241 Ill.Dec. 552, 719 N.E.2d 681. This court has repeatedly stressed that an evidentiary hearing is required whenever a defendant makes a substantial showing of a violation of constitutional rights. *Coleman*, 183 Ill.2d at 381, 233 Ill.Dec. 789, 701 N.E.2d 1063. Thus, if the court finds a substantial showing of a constitutional violation, the inquiry is normally advanced to the third stage of the postconviction procedure where the trial court conducts an evidentiary hearing. *People v. Edwards*, 197 Ill.2d 239, 246, 258 Ill.Dec. 753, 757 N.E.2d 442 (2001). When the petitioner's claims are based on matters outside the record, it is not the intent of the Act that such claims be adjudicated on the pleadings. *People v. Simms*, 192 Ill.2d 348, 360, 249 Ill.Dec. 654, 736 N.E.2d 1092 (2000); *People v. Kitchen*, 189 Ill.2d 424, 433, 244 Ill.Dec. 890, 727 N.E.2d 189 (1999);

*Coleman*, 183 Ill.2d at 382, 233 Ill.Dec. 789, 701 N.E.2d 1063.

In support of its ruling that no hearing is required, the majority asserts that "it is unclear what sort of additional showing defendant could provide which would establish his lack of knowledge." 217 Ill.2d at 200, 298 Ill.Dec. at 559, 840 N.E.2d at 672. The State's counter to this seems to be that, at an evidentiary hearing on a defendant's claims, the burden is on the defendant to prove his claims by a preponderance of the evidence (*People v. Coleman*, 206 Ill.2d 261, 277, 276 Ill.Dec. 380, 794 N.E.2d 275 (2002)), and that contract principles govern this case, requiring the party seeking to enforce a contract to prove its terms (see, *e.g.*, *Mannion v. Stallings & Co.*, 204 Ill.App.3d 179, 186, 149 Ill.Dec. 438, 561 N.E.2d 1134 (1990)). According to the State, the exact terms of the offer agreed upon are matters outside the record. Therefore, it contends, defendant would have to prove his claim either by testifying orally that the State did not tell him during plea negotiations that MSR would be included in his sentence or by submitting an affidavit indicating the same. The State also maintains that it would be free to submit evidence to show that defendant was told that MSR would be a part of his sentence. According to the State, these scenarios would raise conflicts in the evidence and questions of credibility for the court to resolve at the hearing.

The State's analysis would be sound if not for the requirement of Supreme Court Rule 402(b), which requires that the terms of a plea agreement be "stated in open ·677 court." 177 Ill.2d R. 402(b). Specifically, the rule provides in relevant part as follows:

"The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be *stated in open court*. The court, by questioning the defendant personally in open court, shall *confirm the terms of the plea agreement* * * *."

(Emphases added.) 177 Ill.2d R. 402(b).

One of the purposes of an open-court statement and a personal confirmation of the terms of the plea agreement is to prevent a defendant from swearing falsely at a later collateral attack upon the proceedings that the terms of the agreement were other than the actual sentence imposed. See *People v. Salvaggio*, 38 Ill.App.3d 482, 486, 348 N.E.2d 243 (1976). Additionally, this court has emphasized that the requirement "prevents misunderstandings as to the terms of an agreement. It is an efficient means of *reducing what is typically an oral understanding to a matter of record*. It also insures that the agreement will be visible for examination. * * * Announcing the agreement in open court will deter * * * future unfounded claims by a defendant that an agreement entered into was not honored." (Emphasis added.) *People v. Dudley*, 58 Ill.2d 57, 60, 316 N.E.2d 773 (1974).

It would be incongruous to hold that the State is free to argue that the terms of the agreement differed from those stated in open court, while at the same time, preclude a defendant from challenging a plea stated in open court on the basis that it differed from an earlier oral understanding. Rule 402(b) takes the guessing game out of discerning the parties' oral understandings by reducing those understandings to a matter of record. This is analogous to a contract setting where the parties' oral negotiations are reduced to a written contract, with all previous understandings merging into the written contract. Because I find that the plea agreement is a matter of record that can be easily discerned from a review of that record, I agree that no evidentiary hearing is necessary to resolve the benefit-of-the-bargain issue in this case.

EX. B 

IN THE CIRCUIT COURT OF COOK COUNTY

PEOPLE OF THE STATE OF ILLINOIS )　　CASE NUMBER　　10CR0249602
　　　　　　　　　V.　　　　　　　　　 )　　DATE OF BIRTH　 10/07/78
LEROY　　　　SULLIVAN　　　　　　　　 )　　DATE OF ARREST　01/06/10
Defendant　　　　　　　　　　　　　　　　IR NUMBER 1152360 ..ASID NUMBER 037025730

ORDER OF COMMITMENT AND SENTENCE TO
ILLINOIS DEPARTMENT OF CORRECTIONS
================================

The above named defendant having been adjudged guilty of the offense(s) enumerated below
is hereby sentenced to the Illinois Department of Corrections as follows:

| Count | Statutory Citation | Offense | Sentence | | Class |
|---|---|---|---|---|---|
| 001 | 720 5\8-4(720 5\9 1) | (ATT) ATTEMPT FIRST DEGREE MURD | YRS. 025 | MOS.00 | X |
| | and said sentence shall run concurrent with count(s) __ __ __ | | | | |
| 002 | 720-5/12-11(a)(3) | HOME INVASION/ARMED W/FIREARM | YRS. 025 | MOS 00 | X |
| | and said sentence shall run concurrent with count(s) 001 __ __ __ | | | | |
| | | | YRS. | MOS. | |
| | and said sentence shall run (concurrent with)(consecutive to) the sentence imposed on. | | | | |
| | | | YRS. | MOS | |
| | and said sentence shall run (concurrent with)(consecutive to) the sentence imposed on | | | | |
| | | | YRS. | MOS | |
| | and said sentence shall run (concurrent with, consecutive to) the sentence imposed on | | | | |

On Count ___ defendant having been convicted of a class ___ offense is sentenced is
a class x offender pursuant TO 730 ILCS 5,5-5-3 (C) (8.

On Count ___ defendant is sentenced to an extended term pursuant to 730 ILCS 5/5-8-2

The Court finds that the defendant is entitled to receive credit for time actually served
in custody for a total credit of 0414 days as of the date of this order

IT IS FURTHER ORDERED that the above sentence(s) be concurrent with
the sentence imposed in case number(s) _____
AND; consecutive to the sentence imposed under case number(s) _____ _____ _____

IT IS FURTHER ORDERED THAT DEFENDANT SHALL RECEIVE 3 YEARS MSR. DNA SAMPLE_____
CTS 4 5 6 & 7 MS - NOLLE PROS. _____

IT IS FURTHER ORDERED that the Clerk provide the Sheriff of Cook County with a copy of this Order and that the Sheriff
take the defendant into custody and deliver him/her to the Illinois Department of Corrections and that the Department take
him/her into custody and confine him/her in a manner provided by law until the above sentence is fulfilled.

DATED　FEBRUARY 23, 2011　　　　　　ENTER: 02/23/11_____

CERTIFIED BY　K TETTLETON-TEDNESSON
　　　　　　　DEPUTY CLERK　　　　　　　　　JUDGE BRANDON KAY MARIE　　　　1935

RCP1 02/23/11 15 24 41　　　　　　　　　　　　　　　　　　　　　　　CCG-N135

C00071

EX. C

1    STATE OF ILLINOIS    )
                          )   SS:
2    COUNTY OF C O O K    )

3            IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
                  MUNICIPAL DEPARTMENT - THIRD DISTRICT
4

     THE PEOPLE OF THE              )
5    STATE OF ILLINOIS,.            )
                                    )
6            Plaintiff,             )
                                    )
7 ·  vs:                            )   No. 10 CR 2496 02
                                    )
8    LEROY SULLIVAN,                )
                                    )
9            Defendant.             )

10

            STATE'S MOTION TO DISMISS AMENDED SUPPLEMENTAL
11                 PETITION FOR POSTCONVICTION RELIEF

12            REPORT OF PROCEEDINGS had in the above-entitled

13   cause before the Honorable MARC W. MARTIN, Judge of said

14   court, on the 22nd day of July, A.D. 2016.

15       PRESENT:

16       HON. ANITA M. ALVAREZ,
         State's Attorney of Cook County, by
17       MS. BARBARA PLITZ,
             Assistant State's Attorney,
18           on behalf of the People;

19       MS. AMY P. CAMPANELLI,
         Public Defender of Cook County, by
20       MS. INGRID GILL,
             Assistant Public Defender,
21           on behalf of the Defendant.

22
     Donna M. Berzins, CSR, RPR
23   Official Court Reporter
     License No. 084-002121
24   2121 Euclid Avenue, Room 60
     Rolling Meadows, Illinois 60008

                          H-1

1  would like to claim. We rely on the motion to dismiss for
2  that.

3          Petitioner's claim of selective and vindictive
4  prosecution should also be dismissed. The People cite case
5  law which explicitly shows that this claim should be
6  dismissed, and we will rely on the motion to dismiss beyond
7  that.

8          Petitioner also fails to set forth a cognizable
9  ineffective assistance of counsel claim. Petitioner claims
10  in his handwritten affidavit that he took a plea for
11  25 years at 50 percent that was changed to 85 percent after
12  he took it, which is contradicted by the record that is
13  attached to the petition. Case law shows that where the
14  record refutes claims made by Petitioner, dismissal is
15  appropriate. And in addition with regard to that claim,
16  Petitioner has also failed to establish any ineffective
17  assistance of counsel claim in that --

18          THE COURT: What judge took the plea?

19          MS. PLITZ: Judge Hanlon.

20          THE COURT: Did she advise him of the 85 percent
21  possibility?

22          MS. PLITZ: No, your Honor.

23          THE COURT: Was it discussed during the plea?

24          MS. PLITZ: Not in the plea.

A-8

1      THE COURT: When you say it's belied by the record,

2  what do you mean?

3      MS. PLITZ: Well, he says that he took a plea for

4  25 years at 50 percent and that it was changed to 50 (sic)

5  percent after he took it. That's not borne out to be true.

6  That was not part of his plea agreement.

7      THE COURT: Is it 50 percent or 85 percent?

8      MS. PLITZ: 85 percent.

9      THE COURT: When a judge takes a plea where it's going

10  to be 85 percent, doesn't the judge have an obligation to

11  make a statement under the Truth in Sentencing Act that

12  that's what the service of the sentence is going to be?

13      MS. PLITZ: I don't know that that is required by --

14      THE COURT: It is required by statute.

15      MS. PLITZ: I don't have the -- I don't have the case

16  law on that, your Honor.

17      THE COURT: All right. Anything else?

18      MS. PLITZ: Beyond that, your Honor, Petitioner also

19  cannot show that he suffered any prejudice if he was

20  improperly advised as to the amount of time he would have

21  to serve. Case law indicates that he would have to

22  establish that counsel informed him incorrectly as well as

23  he suffered a prejudice because of that. In this matter,

24  Petitioner received a minimal sentence that was allowed

H-9

1   under law, and he has not shown that he -- how he would

2   have had any chance of prevailing at trial. He doesn't set

3   forth any defenses, et cetera. The evidence against him in

4   this matter was overwhelming. He was identified by three

5   separate victims and made an admission with regard to his

6   involvement. So we would ask that you dismiss the

7   petition.

8       THE COURT: Isn't the prejudice in a plea case,

9   doesn't it boil down to whether defendant would have taken

10  the plea but for the erroneous advice?

11      MS. PLITZ: Case law indicates that just making that

12  conclusory statement isn't sufficient.

13      THE COURT: I don't think it's -- I don't think

14  prejudice -- I don't think a petitioner has to show

15  prejudice in the sense that he would have been found not

16  guilty. I think it boils down to whether he would have

17  taken the plea.

18      MS. PLITZ: The People cite to People versus Hall, 217

19  Ill. 2d 324 at 335. "To support the idea that a bare

20  allegation that Petitioner would not have pleaded guilty

21  and insisted on trial if counsel had not been deficient is

22  not enough to establish prejudice."

23      THE COURT: That's a 2005 case. We've had a lot of

24  case law since 2005 on this issue, including from the

H-10

1   United States Supreme Court.  Does that conclude your
2   argument?

3        MS. PLITZ:  Yes, your Honor.

4        THE COURT:  We're going to take a short recess in this
5   case so I can finish our morning call.

6        MS. GILL:  No problem, your Honor.

7                     (Whereupon the case was passed and was
8                      later recalled.)

9        THE COURT:  Leroy Sullivan.

10       MS. PLITZ:  Your Honor, may I point out one thing I
11  forgot to say in my argument?  It's very brief.

12       THE COURT:  You may.

13       MS. PLITZ:  The People would just point out that
14  Petitioner has not actually ever averred that he would not
15  have taken the offer had he not known it was 85 percent.

16       THE COURT:  That's if I even get to the issue.

17            Petitioner, you may argue.

18       MS. GILL:  Ingrid Gill, Assistant Public Defender.
19  Before I start off, your Honor, I just would like to tender
20  to the State Petitioner's Exhibit A in response to their
21  motion and the clerk copy.  It is a copy of the statute
22  because the issue presents both statutory interpretation in
23  addition to the preclusion doctrine encompassed by waiver
24  or forfeiture and res judicata.

Case: 1:22-cv-05706 Document #: 1 Filed: 10/18/22 Page 56 of 83 PageID #:56

EX. D

2.   Name: _____
      Address: _____

      Phone: _____
      SSN: _____

Other personal identifier information as defined in Rule 364(b), to the extent applicable.

(Attach additional pages, if necessary.)

Adopted June 22, 2017, eff. July 1, 2017.

## ARTICLE IV.  RULES ON CRIMINAL PROCEEDINGS IN THE TRIAL COURT

### PART A.  WAIVERS AND PLEAS

Rule
401.   Waiver of Counsel.
402.   Pleas of Guilty or Stipulations Sufficient to Convict.
402A.  Admissions or Stipulations in Proceedings to Revoke Probation, Conditional Discharge or Supervision.
403.   Pleas and Waivers by Persons Under 18.
404 to 410.  Reserved.
411.   Applicability of Discovery Rules.
412.   Disclosure to Accused.
413.   Disclosure to Prosecution.
414.   Evidence Depositions.
415.   Regulation of Discovery.
417.   DNA Evidence.
415 to 429.  Reserved.
430.   Trial.
431.   Voir Dire Examination.
432.   Opening Statements.
433.   Impeachment of Witnesses—Hostile Witnesses.
434.   Jury Selection.
436.   Separation and Sequestration of Jury in Criminal Cases; Admonition by Court.
437 to 450.  Reserved.
451.   Instructions.
452 to 470.  Reserved.
471.   Transcripts for Poor Persons Bringing Post-Conviction Proceedings.
472 to 500.  Reserved.

### Rule 401.  Waiver of Counsel

(a)  Waiver of Counsel.  Any waiver of counsel shall be in open court.  The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1)  the nature of the charge;

(2)  the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3)  that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court.

(b)  Transcript.  The proceedings required by this rule to be in open court shall be taken verbatim, and upon order of the trial court transcribed, filed and made a part of the common law record.

Amended June 26, 1970, eff. Sept. 1, 1970;  June 28, 1974, eff. Sept. 1, 1974;  Sept. 29, 1978, eff. Nov. 1, 1978;  amended April 27, 1984, eff. July 1, 1984.

Formerly Ill.Rev.Stat.1991, ch. 110A, ¶ 401.

### Rule 402.  Pleas of Guilty or Stipulations Sufficient to Convict

In hearings on pleas of guilty, or in any case in which the defense offers to stipulate that the evidence is sufficient to convict, there must be substantial compliance with the following:

(a)  Admonitions to Defendant.  The court shall not accept a plea of guilty or a stipulation that the evidence is sufficient to convict without first, by addressing the defendant personally in open court, informing him or her of and determining that he or she understands the following:

(1)  the nature of the charge;

(2)  the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences;

(3)  that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty; and

(4)  that if he or she pleads guilty there will not be a trial of any kind, so that by pleading guilty he or she waives the right to a trial by jury and the right to be confronted with the witnesses against him or her; or that by stipulating the evidence is sufficient to convict, he or she waives the right to a trial by jury and the right to be confronted with any witnesses against him or her who have not testified.

(b)  Determining Whether the Plea is Voluntary.  The court shall not accept a plea of guilty without first determining that the plea is voluntary.  If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court.  The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea.

(c)  Determining Factual Basis for Plea.  The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea.

(d)  Plea Discussions and Agreements.  When there is a plea discussion or plea agreement, the following provisions, in addition to the preceding paragraph of this rule, shall apply:

(1)  The trial judge shall not initiate plea discussions.  Upon request by the defendant and with the agreement of the prosecutor, the trial judge may participate in plea discussions.  Prior to participating in the plea discussions, the trial judge shall admonish the defendant and inquire as to the defendant's understanding of the following:

That the defendant's attorney has requested that the trial judge participate in the conference to determine whether or not the charge(s) which is/are pending against the defendant can be resolved by a plea of guilty;

That during the course of the conference the prosecutor will be present and advise the judge of the facts of the case as contained in the police reports or conversations with

```
 1  STATE OF ILLINOIS    )
                         )  SS:
 2  COUNTY OF C O O K    )

 3          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT - CRIMINAL DIVISION
 4                   THIRD MUNICIPAL DISTRICT

 5  THE PEOPLE OF THE STATE          )
    OF ILLINOIS,                     )
 6                                   )
                        Plaintiff,   )
 7                                   )
            vs.                      )   No.  10 CR 0249602
 8                                   )
    LEROY SULLIVAN,                  )
 9                                   )
                        Defendant.   )
10

11                      REPORT OF PROCEEDINGS had at the hearing

12  in the above-entitled cause before the HONORABLE KAY M.

13  HANLON, Judge of said court, on the 23rd day of

14  February, 2011.

15          PRESENT:
            HONORABLE ANITA M. ALVAREZ,
16          STATE'S ATTORNEY OF COOK COUNTY, by:
            MS. SANJU OOMMEN,
17          ASSISTANT STATE'S ATTORNEY,
                appeared on behalf of the People;
18
            MR. ABISHI C. CUNNINGHAM, JR.,
19          PUBLIC DEFENDER OF COOK COUNTY, by:
            MR. DANIEL NARANJO,
20          ASSISTANT PUBLIC DEFENDER,
                appeared on behalf of the
21              Defendant Kendall Moore.

22          MS. KELLY CHRISTL,
            ASSISTANT PUBLIC DEFENDER,
23              appeared on behalf of the
                Defendant Leroy Sullivan.
24
```

1

1      THE CLERK:  Leroy Sullivan, Kendall Moore,
2  co-defendant, custody.

3      THE COURT:  Mr. Sullivan, 10 CR 2496, Mr. Moore, 10
4  CR 2496, co-defendants.  Both defendants are in
5  custody.

6          All right.  Mr. Moore and Mr. Sullivan are
7  both before the Court.  Counsel?

8      MR. NARANJO:  Judge, for the record, Daniel
9  Naranjo, assistant public defender on behalf of Mr.
10 Moore.  I was in contact with Ms. Christl this morning.
11 She has a matter at 26th Street this morning.  She
12 indicates she will be arriving roughly about 11 o'clock
13 for Mr. Sullivan.

14         As for Mr. Moore, I'm talking to the State.
15 There is a possibility that we might be able to dispose
16 of this matter today.

17     THE COURT:  Okay.  Mr. Sullivan, of course, we'll
18 wait for your lawyer.  What happened to Mr. Vaughn?
19 Did he get a different date?  On the last court date I
20 wasn't here.

21     MR. NARANJO:  Mr. Vaughn got a different date to
22 accommodate Mr. Franks, since nothing was really set
23 for hearing or motions we -- to accommodate his
24 schedule.

2

```
1        THE COURT:  Okay.  I think he's coming up in two
2  days, the 25th.  We'll pass the case then and as soon
3  as you're ready you let me know.  All right.  Thank
4  you.
5                  (Whereupon, the case was passed.)
6        THE CLERK:  Recalling Leroy Sullivan, co-defendant
7  Kendall Moore.
8        THE COURT:  This is a recall on Mr. Sullivan, Mr.
9  Moore, 10 CR 2496.
10            All right.  Both of the defendants are before
11  the Court.  Counsel for Mr. Sullivan, please?  Your
12  name for the record?
13      MS. CHRISTL:  Kelly Christl, C-h-r-i-s-t-l, from
14  the Multiple Defendant Division.
15      THE COURT:  And counsel for Mr. Moore, please?
16      MR. NARANJO:  Judge, for the record, Daniel
17  Naranjo, assistant public defender on behalf of Mr.
18  Moore.
19      THE COURT:  Ms. State's attorney your name for the
20  record, please.
21      MS. OOMMEN:  Yes, Judge.  Assistant state's
22  attorney Sanju Oommen, S-a-n-j-u, O-o-m-m-e-n.
23      THE COURT:  All right.  Very good.  Counsel, what
24  are we doing this morning?  I believe Mr. Sullivan's
```

3

1 case was set down for hearing on motions, is that
2 correct?

3     MS. CHRISTL: It was continued for status today for
4 him to think about an offer.

5     THE COURT: All right.

6     MS. CHRISTL: At this time Mr. Sullivan is
7 accepting the offer that the Court made.

8     THE COURT: All right. Pursuant to the 402
9 conference?

10     MS. CHRISTL: Yes.

11     THE COURT: All right, very good. Counsel for Mr.
12 Moore?

13     MR. NARANJO: May we approach? On Mr. Moore's case
14 we are asking for a 402 conference.

15     THE COURT: Mr. Moore, your attorney is indicating
16 to me that you would like me to participate in a 402
17 conference. What that means is I'm going to hear facts
18 about this case. I am going to hear some things about
19 you and your background, things that I may not
20 ordinarily here during the course of the trial. I will
21 then indicate what I believe a fair sentence would be
22 should you plead guilty to these charges.

23         If you are not satisfied with the results of
24 this conference, you cannot ask for a new judge for

4

1 trial based on this conference alone. Do you

2 understand that?

3     DEFENDANT MOORE: Yes, ma'am.

4     THE COURT: Would you like me to participate in the

5 conference?

6     DEFENDANT MOORE: Yes.

7     THE COURT: All right. Here's what I'm going to

8 do. I'm going to pass this case for about five

9 minutes. We're going to do the conference on Mr. Moore

10 and then we'll come out and we'll proceed by way of

11 plea as to Mr. Sullivan and then we'll see what Mr.

12 Moore's decision is. All right. Pass the case. And

13 I'll see the attorneys in the back, please.

14                   (Whereupon, the case was passed.)

15     THE CLERK: Recalling Sullivan, co-defendant

16 Kendall Moore.

17     THE COURT: Again, for the record, 10 CR 2496.

18 Both defendants are in custody. We will bring them

19 out.

20       The defendants are back before the Court.

21 Counsel for Mr. Sullivan, your name again for the

22 record.

23     MS. CHRISTL: Assistant public defender Kelly

24 Christl, C-h-r-i-s-t-l.

1     THE COURT: All right. And counsel for Mr. Moore?
2     MR. NARANJO: Judge, Daniel Naranjo, assistant
3 public defender.

4     THE COURT: All right. State's attorneys, for the
5 record, please?

6     MS. OOMMEN: Assistant state's attorney Sanju
7 Oommen along with my partner, Kristin Piper.

8     THE COURT: All right, Mr. Moore, we're going to
9 start out with you.

10        We did have a 402 conference in this matter.
11 I indicated that should you plead guilty to the charge
12 of home invasion, which is a Class X felony, that I
13 would sentence you to six years in the Illinois
14 Department of Corrections. That would be followed by a
15 three-year period of mandatory supervisory release,
16 which is also known as parole.

17        In addition, you would need to submit to DNA
18 indexing and pay mandatory fines and costs which total
19 $655. Do you understand that, sir?

20     DEFENDANT MOORE: Yes, ma'am.

21     THE COURT: All right. And, Mr. Sullivan, we had a
22 402 conference on your behalf on the last court date
23 and  do you remember the results of that conference?

24     DEFENDANT SULLIVAN: Yes, ma'am.

6

1      THE COURT: All right. So both of the defendants

2 are going to be pleading guilty today, is that correct?

3      DEFENDANT SULLIVAN: Yes, ma'am.

4      THE COURT: All right. All right. State, the plea

5 as to Mr. Sullivan is going to be on Count One, which

6 is the attempt first degree murder, and Count Two,

7 which is a home invasion, is that correct?

8      MS. CHRISTL: Correct, Judge.

9      THE COURT: All right. And then Mr. Moore would be

10 Count Three?

11     MS. OOMMEN: That is correct, Judge, and State

12 would ask leave to amend Count Three as to defendant

13 Kendall Moore striking the language of, and while armed

14 with a firearm, and changing that to a dangerous

15 weapon, Judge. That would just change the statute cite

16 to 720, Act Five, Section 12-11a1.

17     THE COURT: All right. And Mr. Naranjo?

18     MR. NARANJO: Judge, no objection to the amendment.

19 We would waive reswearing, reexecution.

20     THE COURT: All right. Then leave to amend Count

21 Three as to Mr. Moore will be granted.

22          Mr. Sullivan, the nature of the charge against

23 you is such that on or about January 6th of 2010 at and

24 within the county of Cook you committed the offense of

7

1 attempt first degree murder and that with you with the

2 intent to commit first degree murder without lawful

3 justification did an act, to wit, discharge a firearm

4 in the direction of Larry Marks, a person you knew or

5 reasonably should have known to be a peace officer, to

6 wit, the Schaumburg Police Department, while he was in

7 the course of performing his official duties as a

8 police officer, which constituted a substantial step

9 toward the commission of the offense of first degree

10 murder, in violation of Chapter 720, Act Five, Section

11 8-4a, 720 5/9-1a1, all of the Illinois Compiled

12 Statutes 1992 as amended.

13      Do you understand the nature of this charge?

14      DEFENDANT SULLIVAN: Yes, ma'am.

15      THE COURT: How are you pleading? Guilty or not

16 guilty?

17      DEFENDANT SULLIVAN: Guilty.

18      THE COURT: It is also alleged that on or about

19 January 6th of 2010 at and within the county of Cook

20 you, along with Lorenzo Vaughn and Kendall Moore,

21 committed the offense of home invasion in that you not

22 being a peace officer acting in the line of duty

23 without authority knowingly entered the dwelling place

24 of Danielle Liker and you knew or had reason to know

8

1 that one or more persons were present and while armed
2 with a firearm you used force along with Mr. Vaughn and
3 Mr. Moore, or threatened the imminent use of force upon
4 Danielle Liker within such dwelling place whether or
5 not injury occurred in violation of Chapter 720, Act
6 Five, Section 12-11a3, of the Illinois Compiled
7 Statutes 1992 as amended.

8          Do you understand, sir, the nature of that
9 charge?

10     DEFENDANT SULLIVAN:  Yes, ma'am.

11     THE COURT:  And how are you pleading to that
12 charge?  Guilty or not guilty?

13     DEFENDANT SULLIVAN:  Guilty.

14     THE COURT:  When you plead guilty, Mr. Sullivan,
15 you do give up several rights, the first of which is
16 your right to have a trial where I would listen to all
17 the evidence.  I would determine your guilt or your
18 innocence.  Are you giving up that right?

19     DEFENDANT SULLIVAN:  Yes.

20     THE COURT:  You are entitled in this case to a jury
21 trial.  Do you know what a jury trial is?

22     DEFENDANT SULLIVAN:  Yes.

23     THE COURT:  And are you waiving your right to a
24 jury trial?

9

1    DEFENDANT SULLIVAN:  Yes.

2    THE COURT:  I am going to show you a document which
3 bears your name, the charge and, counsel, I'm going to
4 add the home invasion on here.  The -- your name, the
5 charges, the case number and today's date.

6        Is this your signature, Mr. Sullivan, on that
7 jury waiver form?

8    DEFENDANT SULLIVAN:  Yes.

9    THE COURT:  You have the right to plead not guilty,
10 to stand silent, have the State prove your guilt beyond
11 a reasonable doubt by calling witnesses to testify and
12 by presenting evidence.  You have a right to
13 cross-examine and to confront those witnesses.  Are you
14 giving up that right?

15    DEFENDANT SULLIVAN:  Yes.

16    THE COURT:  On Count One, which is the attempt
17 first degree murder of a police officer, that is a
18 Class X felony.  What that means is upon a finding of
19 guilty I could sentence you anywhere from 20 years to
20 80 years in the Illinois Department of Corrections with
21 a three-year period of mandatory supervisory release
22 parole.

23        As to Count Two, the home invasion charge,
24 that is also a Class X felony.  Upon a finding of

10

1 guilty I could sentence you anywhere from 21 years to

2 45 years in the Illinois Department of Corrections.

3 Because of your background, you are eligible for an

4 extended term sentence, meaning I could sentence you

5 anywhere from 21 years to 75 years in the Illinois

6 Department of Corrections followed by a three-year

7 period of mandatory supervisory release.

8        Do you understand that, sir?

9     DEFENDANT SULLIVAN:  Yes.

10    THE COURT:  Is anybody forcing you, Mr. Sullivan,

11 or threatening you to plead guilty to these charges?

12    DEFENDANT SULLIVAN:  No.

13    THE COURT:  You are doing so of your own free will?

14    DEFENDANT SULLIVAN:  Yes.

15    THE COURT:  All right.  Mr. Moore, the nature of

16 the charge against you is such that on or about January

17 6th of 2010 at and within the county of Cook you, along

18 with Lorenzo Vaughn and Leroy Sullivan, committed

19 offense of home invasion in that you not being a peace

20 officer acting in the line of duty without authority

21 knowingly entered the dwelling place of Timothy

22 Jillson, and you knew or had reason to know that one or

23 more persons were present, and while armed with a

24 dangerous weapon you, along with Mr. Vaughn and Mr.

11

1 Sullivan, used force or threatened the imminent use of
2 force upon Timothy Jillson, within such dwelling place
3 whether or not injury occurred in violation of Chapter
4 720, Act Five, Section 12-11a1 of the Illinois Compiled
5 Statutes 1992 as amended.

6        Do you, sir, under the nature of this charge?
7     DEFENDANT MOORE: Yes, ma'am.

8     THE COURT: And how are you pleading? Guilty or
9 not guilty?

10     DEFENDANT MOORE: Guilty.

11     THE COURT: When you plead guilty, Mr. Moore, you,
12 too, give up some rights. The first right that you are
13 giving up is your right to have a trial where I would
14 listen to all the evidence. I would determine your
15 guilt or innocence.

16        Are you giving up that right.

17     DEFENDANT MOORE: Yes.

18     THE COURT: You are entitled to a jury trial in
19 this matter. Do you know what a jury trial is?

20     DEFENDANT MOORE: Yes.

21     THE COURT: Are you waiving that right?

22     DEFENDANT MOORE: Yes.

23     THE COURT: I am going to show you a document
24 bearing your name, the charge, the case number and

                         12

1 today's date. Is this your signature on the jury

2 waiver form?

3    DEFENDANT MOORE: Yes.

4    THE COURT: You have the right to plead not guilty,

5 stand silent, have the State prove your guilt beyond a

6 reasonable doubt by calling witnesses to testify and by

7 presenting evidence. You have a right to cross-examine

8 and to confront those witnesses. Are you giving up

9 that right?

10    DEFENDANT MOORE: Yes.

11    THE COURT: Mr. Moore, this is a Class X felony.

12 Upon a finding of guilty I could sentence you anywhere

13 from six years to 30 years in the Illinois Department

14 of Corrections followed by a three-year period of

15 mandatory supervisory release parole.

16       In addition, I could fine you up to $25,000

17 and you would have to submit to DNA indexing. Do you

18 understand that?

19    DEFENDANT MOORE: Yes, ma'am.

20    THE COURT: Is anybody forcing you or threatening

21 you to plead guilty to this offense?

22    DEFENDANT MOORE: No, ma'am.

23    THE COURT: You are doing so of your own free will?

24    DEFENDANT MOORE: Yes, ma'am.

1    THE COURT: All right. State, may I have a factual
2 basis, please?

3    MS. OOMMEN: Yes, Judge. If this case was to
4 proceeded to trial the evidence would show that on
5 January 6th of 2010 the victim, Danielle Liker,
6 L-i-k-e-r, and victim, Timothy Jillson, J-i-l-l-s-o-n,
7 both lived together at the address of 1062 Stonehedge
8 Drive in Schaumburg, Illinois.

9        The evidence would show that defendant Kendall
10 Moore knew the victim Timothy Jillson from previous
11 occasions where victim Jillson had sold defendant Moore
12 marijuana from that address on Stonehedge Drive,
13 Schaumburg, Illinois.

14        The evidence would show that the defendant
15 Leroy Sullivan, who was cousins with Kendall Moore,
16 called Kendall Moore asking where he could find
17 marijuana. At that time defendant Moore told defendant
18 Sullivan that he had gotten a large amount of weed or
19 cannabis from the victim, Timothy Jillson, on previous
20 occasions. At that time defendant Sullivan agreed to
21 rob victim Jillson for the cannabis and possible money
22 and split the proceeds with defendant Moore.

23        Defendant Sullivan brought defendant --
24 co-defendant Lorenzo Vaughn over to defendant Kendall

14

1 Moore's house on January 6, 2010. All three of the

2 defendants then drove by the victims' home on

3 Stonehedge Drive in Schaumburg to scope out the house,

4 and defendant Moore pointed out the victims' house to

5 defendant Vaughn and defendant Sullivan.

6        All three of the defendants then returned back

7 to defendant Kendall Moore's house where they all

8 smoked a cigar filled with cannabis, commonly known as

9 a blunt. After smoking the blunt all three of the

10 defendants went back over to the victims' house, taking

11 duct tape and extension cords from defendant Kendall

12 Moore's home.

13        When they reached the house defendant Kendall

14 Moore remained in the car because victim Timothy

15 Jillson would recognize the defendant Moore from

16 previous occasions. Defendant Sullivan and defendant

17 Vaughn took the duct tape and extension cords and a

18 loaded handgun from the car and approached the victims'

19 house.

20        Defendant Sullivan and defendant Vaughn

21 knocked on the front door of the victims' home. Victim

22 Timothy Jillson answered the door at which time both

23 defendants Sullivan and Vaughn pushed the victim to the

24 ground, entered the home and tied up both victim

15

1  Timothy Jillson and victim Danielle Liker.

2          Both victims were held at gunpoint while the
3  defendants searched the home for cannabis and money.
4  Both the defendants passed the gun between them as they
5  held the victims at gunpoint. Victim Danielle Liker
6  was able to place a call from her cell phone to 911
7  while the defendants were not looking.

8          As a result of victim Danielle Liker's phone
9  call to 911, members of the Schaumburg Police
10 Department police officers, including police officer
11 Larry Marks, responded to the victims' home.  The
12 officers were in full police uniform when they
13 responded to the scene.  The officers knocked on the
14 front door to the victims' home.

15         The defendant Sullivan opened the door and saw
16 the police officers and slammed the door shut and then
17 fled out of the house through the back door.  Defendant
18 Vaughn also fled out of the home.  Police officer Larry
19 Marks pursued defendant Sullivan and while he was
20 pursuing the defendant on foot, defendant Sullivan
21 turned and fired a handgun at Officer Larry Marks.

22         After a brief foot chase both defendants
23 Sullivan and Vaughn were detained.  Defendant Sullivan
24 was positively identified by both victims Danielle

16

1  Liker and Timothy Jillson as one of the people who
2  entered their home and held them at gunpoint.  Officer
3  Larry Marks also identified the defendant who fled, who
4  was the person who fired a handgun in his direction
5  when he had responded to the victims' home.

6       Defendant Vaughn was positively identified by
7  victim Danielle Liker as one of the people who entered
8  her home at gunpoint.  Police officers also identified
9  defendant Vaughn as the person they saw fleeing from
10 that home and who they pursued on foot.  Defendant
11 Kendall Moore was detained a short distance from the
12 vehicle that he was waiting in for the other two
13 defendants.

14      Both defendant Sullivan and defendant Kendall
15 Moore gave statements admitting their involvement in
16 this case.  The evidence would further show that at the
17 time of the event both the defendants were over the age
18 of 17, and all events took place in Cook County,
19 Illinois.

20     THE COURT:  Counsel for Mr. Sullivan?
21     MS. CHRISTL:  So stipulated that would be the
22 testimony of those witnesses were called.
23     THE COURT:  Counsel for Mr. Moore.
24     MR. NARANJO:  So stipulated.

17

1     THE COURT:  Let the record reflect the defendants
2 understand the nature of the charges against them and
3 the possible penalties under the law.  I do believe
4 that you're pleading guilty freely and voluntarily.  I
5 have heard a factual basis for this plea of guilty, so
6 I will accept it.  I will find each of you guilty and
7 I will enter judgments upon this finding.

8         Mr. Sullivan, before I sentence you, you are
9 entitled to a pre-sentence investigation and a written
10 report.  Are you waiving that right?

11     DEFENDANT SULLIVAN:  Yes.

12     THE COURT:  I'm going to show you another document
13 bearing your name, the charges, the case number and
14 today's date.  Is this your signature on that waiver
15 form?

16     DEFENDANT SULLIVAN:  Yes, ma'am.

17     THE COURT:  All right.  Mr. Moore, you are entitled
18 to a pre-sentence investigation and a written report
19 prior to your sentencing.  Are you waiving that right?

20     DEFENDANT MOORE:  Yes, ma'am.

21     THE COURT:  I'm going to show you a document
22 bearing your name, the charge, the case number and
23 today's date.  Is this your signature on that form?

24     DEFENDANT MOORE:  Yes, ma'am.

18

1      THE COURT:  Mr. Sullivan, is there anything that
2 you would like to say to me before I sentence you?
3      DEFENDANT SULLIVAN:  Yes.  Just apologize for
4 everything that happened in this case.
5      THE COURT:  All right.  Mr. Moore, anything you
6 would like to say to me before I sentence you?
7      DEFENDANT MOORE:  Same.  Just apologies for
8 everything that happened.
9      THE COURT:  All right.  Mr. Sullivan, I will
10 sentence you to 25 years in the Illinois Department of
11 Corrections.  That is going to be followed by the
12 three-year period of mandatory supervisory release
13 parole.  You will need to submit to DNA indexing and
14 pay mandatory fines and costs of $655.  The sentence is
15 going to run concurrent or together on both counts.  Do
16 you understand that, sir?
17      DEFENDANT SULLIVAN:  Yes, ma'am.
18      THE COURT:  State, as to Mr. Sullivan, Count Three,
19 Four, Five, Six and Seven?
20      MS. OOMMEN:  Judge, as part of the agreement and
21 pursuant to the plea, that would be Motion State nolle
22 pros.
23      THE COURT:  All right.  Mr. Moore, I will sentence
24 you to six years in the Illinois Department of

19

1 corrections. That will be followed by a three-year

2 period of mandatory supervisory release parole. You

3 will also need to submit to DNA indexing and pay fines

4 and costs of $655. Do you understand your sentence?

5       DEFENDANT MOORE: Yes, ma'am.

6       THE COURT: All right.

7       MR. NARANJO: Judge, with respect to Mr. Moore, we

8 ask the record reflect that he has served 414 days in

9 Cook County custody. Additionally, Judge, we're asking

10 that he be allowed five dollar per day per statute

11 credit toward -- or that -- that amount towards the

12 application of fines and fees.

13      MS. CHRISTL: I would be asking for the same thing

14 on behalf of Mr. Sullivan, and he also has the same

15 time credit.

16      THE COURT: All right. State, 414 days credit as

17 to both of the defendants?

18      MS. OOMMEN: That's correct, Judge.

19      THE COURT: All right. I will allow or I will give

20 you the 414 days credit, each of you, for time

21 considered served, time actually served in the Cook

22 County Department of Corrections. I will also apply

23 credit to the five dollars per day pursuant to the

24 statute which will go -- be deducted if you will from

20

1 lawyer, you will get one appointed for free. You will

2 also receive for free today's transcript for free will

3 assist you in preparing your motion.

4         Mr. Sullivan, do you understand those

5 appellate court rights?

6    DEFENDANT SULLIVAN: Yes, ma'am.

7    THE COURT: Any questions?

8    DEFENDANT SULLIVAN: No, ma'am.

9    THE COURT: Mr. Moore, do you understand those

10 appellate court rights?

11    DEFENDANT MOORE: Yes, ma'am.

12    THE COURT: And do you have any questions?

13    DEFENDANT MOORE: No, ma'am.

14    THE COURT: Is there anything further from either

15 side?

16    MS. OOMMEN: Nothing from the State.

17    THE COURT: All right. Thank you.

18         WHICH WERE ALL THE PROCEEDINGS HAD

19           AT THE HEARING OF THE ABOVE-ENTITLED

20              CAUSE

21

22

23

24

1 STATE OF ILLINOIS  )

2 COUNTY OF C O O K  )

3

4          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
          COUNTY DEPARTMENT - CRIMINAL DIVISION
5             THIRD MUNICIPAL DISTRICT

6

7          I, JULIE A. LaFOND, an Official Court

8 Reporter for the Circuit Court of Cook County, County

9 Department, Criminal Division, Third Municipal

10 District, do hereby certify that I reported in

11 shorthand the proceedings had at the hearing of the

12 above-entitled cause; that I thereafter caused the

13 foregoing to be transcribed into typewriting, which I

14 hereby certify to be a true and accurate transcript of

15 the proceedings before the Honorable Kay Hanlon, Judge

16 of said court.

17

18

19                        *Julie A. LaFond*

20                     Official Court Reporter
                      License No. 084-002997

21

22

23 Dated this 25th day

24 of February, 2015.

June 9, 2014

Fallon Wells

921 College Ave

Matteson, IL 60443

Post-Conviction Committee:

My name is Fallon Wells, fiancé of Leroy Sullivan. On February 23, 2011 my fiancés Public Defender Kelly Christi, advised myself and Leroy's mother that if Leroy was to plead guilty to the charges that was brought against him that Judge Kay Hanlon has agreed to sentence him to 25 years but he would only have to do 50% of that time in prison. If Leroy would have requested a jury trial, the deal that Judge Kay Hanlon had agreed upon would be taken off of the table. I advised Leroy not to take the deal but the Public Defender Kelly Christi said the jurors in Rolling Meadows was prejudice and that he didn't stand a chance in their courtroom and that he would have to do 25 years at 85%. So after meeting with his Public Defender Kelly Christi, Leroy decided to plead guilty to the crime.

Sincerely,

Fallon Wells

"OFFICIAL SEAL"
Lora A. Wynne
Notary Public, State of Illinois
My Commission Expires April 27, 2019

# SUBURBAN BEAT

## 6 BIG STORIES OF THE WEEK FROM THE P

# PROSECUTORS DROP CHARGES AGAINST FORMER COP ACCUSED IN DRUG RING



■ In a stunning reversal, DuPage County prosecutors on Tuesday cited "insufficient admissible evidence to proceed" and dropped all charges against a former Schaumburg cop accused of running a drug-dealing operation with two fellow officers.

Former tactical officer John Cichy, now 35, was arrested in January 2013 along with fellow former officers Matthew Hudak, now 34, and Terrance O'Brien, now 51, and accused of forcing an informant to sell narcotics the officers had confiscated. Both the other officers pleaded guilty and are serving prison sentences of 26 and 24 years respectively.

Cichy's trial, on charges that could have landed him in prison for between 15 and 36 years, was scheduled to begin Tuesday.

Instead, DuPage State's Attorney Robert Berlin announced he would not pursue the prosecution after consulting with top members of his staff.

"The evidence against Mr. Cichy is different than his co-defendants, and recent developments in this 5-year-old case led me to this decision," Berlin said. "The developments in Mr. Cichy's case will have no impact whatsoever in the pleas and sentences

**Former Schaumburg police officer John Cichy leaves the DuPage County Courthouse Tuesday after prosecutors dropped all charges against him.** | DAVE WIEDELMAY HERALD

involving Mr. Hudak and Mr. O'Brien."

Above all else, Berlin said, "my office has a continuing, moral, ethical and legal obligation to ensure the credibility of a prosecution. Cases evolve from the date of the arrest to the trial date. In a case such as the evolution of a case is such that the facts and circumstances will no longer result in a successful prosecution, the law demands that the prosecution cease."

Cichy's attorney, Jeb Fuller, called the decision "one of the most incredible situations" he has ever seen.

"At different points in this investigation, I was told by the state's attorney's office that ...

law enforcement, this was one of the most important cases they have in their caseload," Fuller said. "Now for them to dismiss it is certainly an incredible situation."

Fuller said he was informed the morning that the charges would be dropped, which led to a "tearful" phone call to Cichy.

The complete basis for the dismissal, however, remains a mystery to him and attorneys representing O'Brien and Hudak, who also were in court Tuesday.

"The only basis I know is that there was a problem with their informant and that is the reason why they were not proceeding forward today," Fuller said.

— Justin Kmitch

Legal

K58721        Sullivan



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721
(217) 782-2035

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

January 26, 2022

In re:    People State of Illinois, respondent, v. Leroy Sullivan, petitioner.
Leave to appeal, Appellate Court, First District.
127921

The Supreme Court today DENIED the Petition for Leave to Appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on 03/02/2022.

Very truly yours,

Cynthia A. Grant

Clerk of the Supreme Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT

Leroy Sullivan
Plaintiff/Petitioner

Vs.

Warden Mark Williams
Defendant/Respondent

)
)
)
)
)
)
)

No. 10 CR 249602

## PROOF/CERTIFICATE OF SERVICE

TO: Thomas G Bruton
219 S. Dearborn
Chicago IL 60604

TO:_____

TO:_____

TO:_____

1. 3 Copies Federal Habens Corpus

2._____

3._____

4._____

5._____

6._____

PLEASE TAKE NOTICE that on _____, 20___, I placed the attached or
enclosed documents in the institutional mail at _____ Correctional Center,
properly addressed to the parties listed above for mailing through the U.S. Postal Service.

Dated:_____

/s/_____
Name: Leroy Sullivan
IDOC#: K 58721
Address: P.O Box 1700
Galesburg IL 61402

State of Illinois
County of Knox
Signed and sworn (or affirmed) to before me on 6 Day of October, 20 22
by Leroy Sullivan (name/s of person/s making statement).

OFFICIAL SEAL
ANDREW C STODOLKIEWICZ
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires Nov. 02, 2025

(Signature of Notary Public)

US POSTAGE PITNEY BOWES

ZIP 61401 $ 009.40⁰
02 4W
0000373346 OCT 12 2022

**LEGAL MAIL**

Clerk Thomas G. Bruton
219 S. Dearborn
Chicago IL 60604

10/18/2022-31

Mr. Leroy Sullivan #K-58721
P.O. Box 1700
Galesburg IL 61402



**PRIORITY MAIL**
★ ★ ★
TRACKED
★ ★ ★
INSURED

UNITED STATES
POSTAL SERVICE®

For Domestic and International Use

Label 107R, May 2014

UNITED STATES
POSTAL SERVICE®

USPS TRACKING #

9114 9022 0085 2023 9686 41

Label 400 Jan 2013
7690-16-000-7948

