UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY SULLIVAN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 22-cv-5706 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| JOHN BARWICK, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Congress filled the habeas corpus hourglass with one year of sand. A state court prisoner has one year to file a habeas corpus petition in federal court, before all of the grains of sand fall to the bottom and time runs out. But sometimes the hourglass gets turned on its side, and the passage of time doesn't count toward the one-year limit. Time marches on, but in Habeas Corpus Land, sometimes time stops.

In 2011, Leroy Sullivan pled guilty to home invasion and attempted first degree murder of a peace officer. He didn't appeal. Two years later, in 2013, Sullivan filed a motion in state court to obtain the transcripts from his court proceedings. He attached an affidavit alleging that the police officers were corrupt.

In 2014, Sullivan filed a *pro se* petition for postconviction relief. He claimed a violation of due process because the arresting officer had pled guilty to reselling drugs seized from drug dealers. Sullivan also claimed that his attorney never told him that he would serve 85% of the time for his sentence, not 50% of the time.

After an evidentiary hearing, the state court denied his petition, and an appellate court affirmed. The Illinois Supreme Court declined to hear the case in January 2022.

Almost nine months later, in October 2022, Sullivan filed a petition for habeas corpus in federal court. The Warden, in turn, moved to dismiss on timeliness grounds.

For the reasons stated below, the motion to dismiss is granted.

### Background

In 2010, Leroy Sullivan and two companions tried to rob a marijuana dealer at his house. *See People v. Sullivan*, 2021 WL 4173610, at ¶ 6 (Ill. App. Ct. 2021). They came equipped with "duct tape, extension cords, and a firearm." *Id.* They tied up a man and a woman and searched the house. *Id.*

The woman called 911, and Schaumburg police officers responded. *Id.* Sullivan fled. *Id.* When an officer pursued, Sullivan shot at him. *Id.* Sullivan was soon arrested. The victims and the police officer later identified Sullivan as the assailant, and Sullivan gave an inculpatory statement.

A guilty plea followed. On February 23, 2011, Sullivan pled guilty to home invasion and attempted first degree murder of a peace officer. *Id.* at ¶ 4. Sullivan admitted the factual basis for his plea, including the fact that he had shot at the officer (Larry Marks). *Id.* at ¶ 6.

That day, the state court sentenced Sullivan to two concurrent 25-year prison terms.[1] *Id.* Sullivan did not move to withdraw his plea and did not file a direct appeal. *Id.*

More than two years later, in August 2013, Sullivan filed *pro se* motions for transcripts and for the appointment of counsel. *Id.* at ¶ 7; *see also* 8/20/13 Mtn. for Trial Transcripts & Common Law Records (Dckt. No. 16-8, at 1 of 9). He attached an affidavit alleging that the police officers involved in his case were corrupt. *See* 8/20/13 Affidavit (Dckt. No. 16-8, at 4 of

---

[1] The parties did not file the state court judgment. Even so, the Court reads the record to mean that the state court entered judgment on the day when Sullivan pled guilty. The habeas petition says that the date "of the judgment of conviction" was "February 23, 2011." *See* 10/6/22 Petition (Dckt. No. 1, at 1 of 83).

2

9) ("I believe my case has merit because the police officers in my case have been proven to be corrupt.").

The state court denied the motion.² *See Sullivan*, 2021 WL 4173610, at ¶ 7. Sullivan appealed, but the appeal was dismissed for want of prosecution. *Id.*

On May 16, 2014, Sullivan filed a *pro se* state court petition for postconviction relief. *Id.* at ¶ 8; *see also* 5/16/14 *Pro Se* Postconviction Petition (Dckt. No. 16-2). He alleged false arrest. *See Sullivan*, 2021 WL 4173610, at ¶ 8. He also claimed ineffective assistance of counsel, alleging that his attorney had misinformed him about the amount of time that he would serve before parole. *Id.*

Sullivan then received postconviction counsel, who filed an amended supplemental petition. The amended petition pointed out that the arresting officer, Terrence O'Brien, "was later convicted of various federal felonies." *Id.* at ¶ 13 (cleaned up); *see also* 8/14/15 Amended Supplemental Petition for Postconviction Relief (Dckt. No. 16-3).

Sullivan also alleged that his plea counsel (Kelly Christl) had "misinformed him as to how much of his prison sentence he must serve before becoming eligible for parole." *See Sullivan*, 2021 WL 4173610 at ¶ 13; *see also id.* at ¶ 17. According to Sullivan, his plea counsel said that he would be "eligible for day-for-day credit," which apparently was not the case. *Id.* at ¶ 13.

As it turns out, Illinois law requires defendants to serve 85% of the time, not 50% of the time, for a conviction of attempted murder of a peace officer. That is, the maximum reduction of a sentence for that crime is 15%, not 50%, which makes a big difference in a long sentence.

---

² The state appellate court decision says that Sullivan filed "motions" (plural) for transcripts and the appointment of counsel, and that the lower court denied the "motion" (singular). *See Sullivan*, 2021 WL 4173610 at ¶ 7. This Court does not know if the state court denied one or both of the motions. At the end of the day, it does not matter. Sullivan appealed the lower court ruling, but later abandoned the appeal.

Sullivan claimed that he would not have pled guilty if he had known about his ineligibility for day-for-day credit. *Id.*

Sullivan also brought a selective prosecution claim, which was later dismissed.

The state court held an evidentiary hearing on the claims about the arresting officer and the attorney. *Id.* at ¶ 16. Three witnesses testified: Sullivan, Officer O'Brien, and attorney Christl. *Id.* at ¶¶ 17, 26, 28. O'Brien was in prison at the time of the hearing.

Christl testified about her communications with Sullivan before he pled guilty. She recalled telling Sullivan that a sentence for attempted first degree murder would be served at 85% time, and that he would not receive day-for-day credit. *Id.* at ¶¶ 31, 32, 34, 38.

After hearing the evidence, the state court denied Sullivan's petition. The court found that Christl's testimony was "credible." *Id.* at ¶ 38; *see also* 11/9/18 Circuit Court Order Denying Postconviction Petition (Dckt. No. 16-5).

Sullivan appealed. *See Sullivan*, 2021 WL 4173610, at ¶ 39. The Appellate Court of Illinois affirmed, concluding that the denial of postconviction relief was not against the manifest weight of the evidence. *Id.* at ¶ 51; *see also* 9/14/21 Appellate Court of Illinois Decision (Dckt. No. 16-1).

Sullivan filed a petition for leave to appeal in the Supreme Court of Illinois. *See People v. Sullivan*, 184 N.E.3d 1003 (Ill. 2022); *see also* 11/17/21 Petition for Leave to Appeal (Dckt. No. 16-7). The Supreme Court of Illinois denied the petition on January 26, 2022. *See Sullivan*, 184 N.E.3d at 1003. At that point, Sullivan hit the end of the state court postconviction road.

Sullivan turned to federal court. He prepared a *pro se* petition for a writ of habeas corpus, and he put it in the prison mailbox on October 6, 2022.[3] *See* Certificate of Service, at 82 of 83 (Dckt. No. 1).

The habeas petition reiterates the arguments about the officer, and about ineffective assistance of counsel. Sullivan alleges that the state court deprived him of due process because the arresting officer "pled guilty to running a drug operation and [to] forcing an informant to sell narcotics[.]" *Id.* at 5 of 83. Sullivan also argues that he "was never admonished by the courts that 85% [of time served] was part of [his] plea agreement." *Id.* at 7 of 83.

The Warden responded with a motion to dismiss, arguing that the habeas petition was untimely. *See* Mtn. to Dismiss (Dckt. No. 15).

## Analysis

Congress gave state prisoners a time limit of one year to file a habeas corpus petition. *See* 28 U.S.C. § 2244(d)(1); *see Wall v. Kholi*, 562 U.S. 545, 550 (2011). If the petition is

---

[3] This Court is selecting a conservative date for when Sullivan sent the habeas corpus petition to this Court. The petition includes a certificate of service, and the certificate of service was notarized on October 6, 2022. *See* Petition (Dckt. No. 1, at 82 of 83). The date by the notary is suggestive, but the certificate of service isn't completely clear, either. When it came to the punchline, the certificate of service was blank. That is, Sullivan certified that he served the habeas petition on "_____, 20_____," and neglected to fill it in. *Id.* The prison then mailed the petition by U.S. Mail on October 12, 2022 (as revealed by the postmark), and it hit the docket on October 18, 2022. *Id.* at 83 of 83. The appropriate date is the day when the prisoner put the habeas petition in the prison's mail system. *See Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) ("We join the overwhelming authority that the *Houston* mailbox rule should be extended to prisoners filing *pro se* habeas petitions, and, for statute of limitations purposes, a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk."); *United States ex rel. Cook v. Williams*, 2023 WL 5211581, at *6 (N.D. Ill. 2023) ("[T]he mailbox rule applies to *pro se* habeas petitions, such that 'a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk.'"). Sullivan did not clearly establish when he mailed the habeas petition in the prison mail system, because he left the form blank. Even so, the Court selects the earliest date, which is the date most favorable to Sullivan. It does not change the outcome, and in light of the signature by the notary, it seems more likely than not that Sullivan put the petition in the prison mail on October 6, 2022.

untimely – and equitable tolling can't save it – a district court must dismiss the petition with prejudice. *See Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005).

The time period is fixed, but the starting point is flexible. The opening bell for the one-year period depends on the procedural history, the timing of the creation of the right at stake, and the ability of the prisoner to discover the facts.

The clock starts ticking on the "latest" of four possible dates: (1) "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," (2) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action," (3) "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," or (4) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(A)–(D). The last timer that starts is the timer that matters.

The idea is that the clock begins when the state case has reached a dead end, and there is a clear path and a green light to the federal courthouse. Basically, prisoners have one year after reaching the end of the road in state court, when they have a straight shot to the federal courthouse with no roadblocks in sight. Prisoners cannot idle in neutral when they have (or could have) the facts to drive to federal court.

But sometimes the clock stops. Specifically, the clock doesn't tick when the prisoner is pursuing postconviction relief in state court. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or

claim is pending shall not be counted toward any period of limitation under this subsection." *See* 28 U.S.C. § 2244(d)(2).

Two of the four possible starting points aren't at issue here. This case does not involve the removal of an impediment to bring a habeas petition, and it does not involve a right newly recognized by the Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(B), (C).

The question is when the clock started ticking under the other two provisions. *See* 28 U.S.C. § 2244(d)(1)(A), (D). And then, this Court needs to pick the "latest" of those two starting points. *See* 28 U.S.C. § 2244(d)(1). If more than one year ran off the clock after it started ticking, then the petition is untimely.

The Court will address those two provisions, one at a time. The punchline is that Sullivan's petition is late, no matter which provision applies. Under each possible starting point, more than one year ticked off the clock.

## I. A Final Judgment in State Court

The first possibility is that the one-year period began when the state court "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). This Court must figure out when the state court judgment became final, and whether more than one year ran off the clock since then.

The state court entered judgment against Sullivan on February 23, 2011, after his guilty plea. *See Sullivan*, 2021 WL 4173610, at ¶ 4. At that point, under Illinois rules, Sullivan had 30 days to appeal or to move to withdraw his plea.

Sullivan did neither. He did not move to withdraw his plea, and did not file a direct appeal. *See Sullivan*, 2021 WL 4173610, at ¶ 6. So Sullivan's state court judgment became final on March 25, 2011, meaning 30 days after February 23, 2011. *See Foremin v. Gomez*, 2022 WL

7

2390942, at *2 (N.D. Ill. 2022) (noting that a state court conviction "became final when the time for filing a motion to withdraw [the prisoner's] guilty plea expired, which is 30 days after the entry of judgment under Illinois Supreme Court Rule 604(d)"); *Zuno v. Brannon-Dortch*, 2023 WL 4083907, at *2 (N.D. Ill. 2023).

The clock started ticking on March 25, 2011. But Sullivan did not file his habeas petition until 2022, more than a decade later. That's much too late, unless the clock was stopped in the meantime.

Sullivan did file a postconviction petition in state court. *See* 5/16/14 Postconviction Petition (Dckt. No. 16-2). Under the statute, the postconviction petition stopped the clock. *See* 28 U.S.C. § 2244(d)(2).

But a postconviction petition can't turn back the hands of time. *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("[A] state proceeding that does not begin until the federal year has expired is irrelevant."). If all the time ran off the clock, a later postconviction petition can't bring it back. That's like calling a timeout after the game is over.

Sullivan did not file his state court postconviction petition until May 16, 2014, more than three years after the state court judgment became final on March 25, 2011. So, if the first provision provides the starting point, Sullivan's habeas petition is too late.

## II. A Discovery of the Factual Predicate

The other possibility is that the one-year clock started ticking when Sullivan discovered or could have discovered the factual basis for his claim. Under the statute, the one-year period can begin when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

The text hints at a potential issue. The statute refers to the "claim or claims." *Id.* What if some of the claims fall within the one-year period, and some of the claims fall outside the one-year period? Can a toehold for one claim become a foothold for all claims?

That is, if one claim is timely, are all of the other claims deemed timely, too? If one claim has its foot in the door, can all of the claims pass through? Is it in-for-a-penny, in-for-a-pound?

Or, on the flipside, does each claim rise or fall separately, based on whether that particular claim is timely? Does each claim have its own clock? How many timers are there?

The answer is up in the air. "The Supreme Court and the Seventh Circuit have not directly answered whether timeliness should be evaluated on a claim-by-claim basis, or whether a habeas corpus petition should be evaluated in its entirety so that if any claim is timely then all claims are timely." *See Zuno*, 2023 WL 4083907, at *4 (citing *Taylor v. Michael*, 724 F.3d 806, 809 n.3 (7th Cir. 2013)).

But the Supreme Court has "suggested in dicta" that each separate claim must be timely to survive, and that a timely claim cannot save an untimely claim. *Id.* (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005)). Every Circuit "to rule on the question follows this approach." *Id.*; *see also Fielder v. Varner*, 379 F.3d 113, 119 (3d Cir. 2004) (Alito, J.) ("[T]here is nothing unusual about the wording of § 2244(d)(1). It is common for statute of limitations provisions to be framed using the model of a single-claim case. . . . Although these provisions are framed on the model of the one-claim complaint, it is understood that they must be applied separately to each claim when more than one is asserted.").

This Court will go down the same road. This Court will take a "claim-by-claim" approach to subsection (D). For each claim, the Court will start the clock when the underlying

9

"factual predicate could have been discovered through the exercise of due diligence." *See Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (cleaned up).

In the end, in the case at hand, there is no need to resolve whether a timely claim can save an untimely claim. On this record, the answer is academic. None of the claims are timely, so this Court does not need to cross that bridge and figure out whether a timely claim can save an untimely claim. There is no toehold to stand on.

### A. The Due Process Claim

The first claim is about the arresting officer. Sullivan alleges that the state case violated his right to due process because Officer O'Brien later "plead [sic] guilty to running a drug dealing operation and for forcing an informant to sell narcotics he and fellow officers confiscated."[4] *See* Petition, at 5 of 83 (Dckt. No. 9).

Under the statute, the question is when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D). The parties disagree about when Sullivan could have discovered his claim about the officer.

The Warden believes that Sullivan could have discovered the factual basis for his claim on the day that O'Brien was indicted: January 31, 2013. *See* Indictment, at 1 (Dckt. No. 16-9). As the Warden sees it, the one-year clock started ticking when O'Brien was indicted, because the indictment was public.

Sullivan disagrees. He notes that he is not a "lawyer, state's attorney, judge, or police officer." *See* Resp., at 4 of 7 (Dckt. No. 23). He explains that "being incarcerated gives [him]

---

[4] O'Brien did serve time in prison. *See Sullivan*, 2021 WL 4173610, at ¶ 26.

only so much access to public news," and that he did not have access to a radio or "anything that broadcast the news" when O'Brien was arrested. *Id.*

As a practical matter, prisoners have less access to news than members of the general public. For that reason, the due diligence inquiry does "take into account that prisoners are limited by their physical confinement." *See Moore v. Knight*, 368 F.3d 936, 940 (7th Cir. 2004); *see also United States ex rel. Fergerson v. Atchison*, 2012 WL 581163, at *5 (N.D. Ill. 2012) ("[The Warden's] argument is tantamount to requiring a prisoner to hunt through haystacks trying to figure out whether one of them might contain a needle. Due diligence does not require this.").

Even so, this Court does not need to wade into whether Sullivan could have discovered the factual basis for his claim on the date of the indictment of the officer in January 2013. By August 2013, O'Brien knew enough about the officer's misconduct to start the clock.[5]

On August 20, 2013, Sullivan filed a motion asking the state court for the transcripts from his case to help him prepare his postconviction petition. *See* 8/20/13 Mtn. for Trial Transcripts & Common Law Records (Dckt. No. 16-8, at 1–4 of 9); *see also Sullivan*, 2021 WL 4173610, at ¶ 7. Sullivan told the court that he believed that his "case has merit because the police officers in [his] case have been proven to be corrupt." *See* 8/20/13 Affidavit, at ¶ 5 (Dckt. No. 16-8, at 4 of 9).

By his own account, Sullivan had reason to believe that the police officers were "corrupt" by August 20, 2013. *Id.* And he knew that he wanted to seek potential relief based on that

---

[5] Sullivan revealed more about the scope of his knowledge in a motion for reconsideration on October 17, 2013. "As this Court is aware S[c]haumburg Police Officers O'Brien, Hudak, and Cichy have resigned their positions and face Class C charges by the States Attorneys [sic] Office." *See* 10/17/13 Mtn. for Reconsideration (Dckt. No. 16-8, at 8 of 9). Even if the clock started ticking on October 17, 2013, Sullivan's claim would be too late. October 17, 2013 to May 16, 2014 is 211 days, and January 26, 2022 to October 6, 2022 is 253 days. Putting them together, that's more than one year.

11

corruption. So Sullivan knew enough about the "factual predicate of the claim" to start the one-year clock ticking on August 20, 2013. *See* 28 U.S.C. § 2244(d)(1)(D).

Time ran for 269 days. The clock then stopped on May 16, 2014,[6] when Sullivan filed his state postconviction petition.[7] *See* Certificate of Service, at 1 (Dckt. No. 16-2); *see also* 28 U.S.C. § 2244(d)(2).

The clock started ticking again on January 26, 2022, when the Supreme Court of Illinois denied Sullivan's petition for leave to appeal. *See Sullivan*, 184 N.E.3d at 1003; *see also Lawrence v. Florida*, 549 U.S. 327, 332 (2007). But at that point, there wasn't much time left on the clock.

At that point, 269 days had already run on the 365-day clock. Sullivan had only 96 days left, before his time expired. Doing a little math, 96 days after January 26, 2022 was May 2, 2022. So, Sullivan needed to file his claim by May 2, 2022, or it was untimely.

Sullivan did not file his habeas petition until October 6, 2022. That's more than five months after the deadline. *See* Petition (Dckt. No. 1). So, Sullivan's claim about the arresting officer is untimely.

---

[6] The state court stamped Sullivan's postconviction petition as filed on May 22, 2014. *See* Certificate of Service, at 1 (Dckt. No. 16-2). The Court uses May 16, 2014 instead because Sullivan attested – with a notary's seal – that he put the documents in the prison's mail on May 16. *See Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012) ("[T]he mailbox rule applies to a state pro se prisoner's post-conviction filings unless the state where the prisoner was convicted has clearly rejected the rule."). The Warden agrees that the mailbox rule applies here. *See* Mtn. to Dismiss, at 2 n.1 (Dckt. No. 15).

[7] Sullivan did file *pro se* state court "motions for transcripts and appointment of counsel" in August 2013. *See Sullivan*, 2021 WL 4173610, at ¶ 7. But the motions were not an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." *See* 28 U.S.C. § 2244(d)(2). In other words, Sullivan's request for transcripts and a lawyer didn't challenge his conviction. *See* 8/20/13 Mtn. for Trial Transcripts & Common Law Records (Dckt. No. 16-8, at 1–6 of 9). So, they weren't the type of state court filing that could freeze the limitations period. *See Sudduth v. Raemisch*, 532 F. App'x 823, 824 (10th Cir. 2013) (Gorsuch, J.) (noting that "motions for transcripts and the like do not stop the limitations clock") (citation omitted); *see also Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) ("[T]here is no federal precedent for treating a motion for appointment of counsel as a properly filed application for postconviction relief.").

Put another way, 269 days passed between August 20, 2013 (when Sullivan submitted his affidavit) and May 16, 2014 (when he mailed his postconviction petition). Then, 253 days passed between January 26, 2022 (when the Supreme Court of Illinois denied his petition) and October 6, 2022 (when Sullivan mailed his habeas petition). *Use generally* www.timeanddate.com. That's 522 days, and that's too long.

Sullivan argues that the Court should start the limitations period on March 21, 2014, when O'Brien pled guilty. *See* Resp., at 3 of 7 (Dckt. No. 23). As Sullivan sees things, O'Brien's guilty plea turned O'Brien's misconduct into "a fact of law." *Id.*

Not so. The plea agreement involving O'Brien is not the factual basis for Sullivan's claim. The underlying conduct is. Sullivan's claim rests on the corruption of the officer, and Sullivan knew about possible corruption in August 2013. Sullivan knew enough about O'Brien's conduct in August 2013 to start the clock ticking.

One final note. The Warden's math seems to be off. The Warden counted the number of days from August 20, 2013 to May 16, 2014. He calculated that the duration spanned "239 days." *See* Mtn., at 9 (Dckt. No. 15) ("The limitations period ran, untolled, for 239 days from August 20, 2013, to May 16, 2014, when petitioner filed his postconviction petition.").

A district court "is not required to doublecheck the State's math." *See Day v. McDonough*, 547 U.S. 198, 210 (2006); *see also Zuno*, 2023 WL 4083907, at *3 ("The statute of limitations is a non-jurisdictional affirmative defense, and the Court is under no obligation to *sua sponte* correct Respondent's statute of limitations calculation."). District courts have no obligation to represent a *pro se* litigant, and "by the same token, they surely have no obligation to assist attorneys representing the State." *See Day*, 547 U.S. at 210.

13

But this Court is allowed to raise a "clear computation error." *Id.* Typically, it must give each side "fair notice and an opportunity to present" its position in response. *Id.*

This Court can take judicial notice of math. And in any event, the Warden's calculation was favorable to Sullivan by 30 days. Even under the Warden's calculation, Sullivan was too late.

**B.      Ineffective Assistance of Counsel**

The next claim – or maybe claims, plural – is about Sullivan's ineligibility for day-for-day credit. This Court is not sure whether Sullivan is alleging one or two more claims, in addition to the due process claim.

On its face, the habeas corpus petition contains two claims, not three. The first claim ("GROUND ONE") is the due process claim. *See* Petition (Dckt. No. 9, at 5 of 83). The second claim ("GROUND TWO") is entitled "Ineffective Assistance of Counsel." *Id.* at 7 of 83. And "GROUND THREE" is left blank. *Id.* at 8 of 83.

But digging a little deeper, it is possible to read the second claim to allege more than ineffective assistance of counsel. The text under the heading explains the claim, and it seems to take issue with the actions of the trial court, not Sullivan's lawyer.

Sullivan alleges that the state court did not tell him that serving "85%" of his sentence was part of his plea agreement. *Id.* at 7 of 83. "I was never admonished by the courts that 85% was part of my plea agreement. The courts never said the terms of my plea would be different from my codefendant who took his plea at the same time I took my plea. 85% was never discussed." *Id.*

Sullivan's petition then summarized Illinois Supreme Court Rule 402(b), which requires the trial court to determine if the plea is voluntary before accepting it. Other than the heading

"Ineffective Assistance of Counsel," the petition does not fault his attorney. By and large, the petition seems to put the blame at the feet of the trial court.

In his response brief, Sullivan puts forward both theories. He argues that his plea counsel was ineffective because she failed to do her "number one job," to "make sure that the defendant knows all outcomes of any legal action." *See* Resp., at 5 of 7 (Dckt. No. 23). He also argues that his plea was not voluntary because the state court did not discuss the "terms" with him, meaning the "percent of time" that Sullivan would serve. *Id.* at 6 of 7.

Labels do not control the meaning of a pleading. *See, e.g.*, *Guyton v. United States*, 453 F.3d 425, 426 (7th Cir. 2006) ("This court's case law establishes that the substance of a party's submission takes precedence over its form."); *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 914 (N.D. Ill. 2006) ("[I]n the federal courts, pleadings, motions, and supporting memoranda are measured by their content, not their title."). The substance of the package carries more weight than the packaging.

The Warden's motion to dismiss "liberally construes the petition to assert both an ineffectiveness claim and an admonishment claim." *See* Mtn. to Dismiss, at 4 n.3 (Dckt. No. 15). This Court will do the same. *See Famous v. Fuchs*, 38 F.4th 625, 631 n.22 (7th Cir. 2022) ("Like pro se complaints, pro se habeas petitions must be construed liberally.").

The Court reads the petition to allege both an ineffective assistance of counsel claim, and an admonishment claim. The common thread running through both theories is Sullivan's lack of knowledge about the 85% time. Sullivan argues that he did not know about his ineligibility for day-for-day credit when he pled guilty.

Sullivan's argument runs into two roadblocks.

15

For starters, Sullivan's argument is inconsistent with the factual findings of the state court. The state court held an evidentiary hearing on Sullivan's postconviction petition. The state court heard testimony about when Sullivan learned about his ineligibility for day-for-day credit.

Basically, the state trial court heard conflicting testimony at the evidentiary hearing, and had to make a "credibility determination." *See Sullivan*, 2021 WL 4173610, at ¶ 47. Sullivan testified that his attorney never told him that he was ineligible for 50% time, but Sullivan's attorney testified that she explained the whole thing. *Id.* The state court heard a "competing version of events." *Id.* ("These competing versions of events—that Christl entered plea negotiations hoping to obtain a guilty plea to a charge that was eligible for day-for-day credit but was unsuccessful, as opposed to defendant's assertion that Christl told him he would be eligible for day-for-day credit and that he would have rejected the plea had he known he was required to serve 85% of his sentence—presented the circuit court with a credibility determination.").

In the end, the state court concluded that Sullivan's counsel did, in fact, tell him that he would receive 85% time, not day-for-day credit. *Id.* at ¶ 38 ("Christl 'recollected' telling defendant that a sentence for the offense of attempt first degree murder of a peace officer would be served at 85%. The court found Christl's testimony credible and further noted she had 'no motivation not to advise' defendant about good time credit.").

That factual finding withstood an appeal. The Appellate Court of Illinois concluded that the finding of the trial court on that disputed question of fact was not manifestly erroneous. *Id.* ("Ultimately, the court credited Christl's testimony that she told defendant she would try to negotiate a plea where he would plead guilty to an offense that was eligible for day-for-day sentencing credit but was ultimately unsuccessful, and relayed to defendant that the State's offer

16

was 25 years on attempt murder of a peace officer to be served at 85%. It was for the circuit court, as finder of fact at the hearing, to make credibility determinations and weigh the evidence.").

On this record, the state court's finding of fact prevents Sullivan from obtaining habeas relief. When a state court determines a fact, a federal court reviewing a habeas petition presumes that the fact is correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner can rebut the presumption with "clear and convincing evidence." *Id.* But this Court does not see "clear and convincing evidence" undermining the state court's finding.

The state court concluded that Sullivan knew about his ineligibility for 50% time on or before he pled guilty on February 23, 2011. As a result, Sullivan's 2022 habeas petition was untimely, even after excluding the time for the postconviction petition in state court.[8]

Even under Sullivan's version of the events, his petition is too late. Sullivan argues that he spent "almost 2 years in the custody of the Illinois Department of Corrections" before he learned that he would have to serve 85% of his sentence. *See* 11/17/21 Petition for Leave to Appeal, at 4 (Dckt. No. 16-7).

For the sake of argument, the Court will start the clock on Sullivan's "time in custody" on the day of sentencing. That's potentially conservative because it excludes all of the time as a pretrial detainee, which began in January 2010. *Id.* The Court assumes that the "custody of the *Illinois Department of Corrections*" means his time in prison, after sentencing. *Id.* (emphasis added).

---

[8] That finding raises an oddity. Sullivan argues that he didn't know about his ineligibility for 50% time. The state court concluded that Sullivan *did* know about his ineligibility for 50% time, because his lawyer told him so before the state court entered judgment. And that knowledge started the clock ticking on a claim about a lack of knowledge. So, in effect, the clock started ticking on a claim about Sullivan's *lack* of knowledge on the day that he *had* knowledge.

Sullivan was sentenced on February 23, 2011. *See Sullivan*, 2021 WL 4173610, at ¶¶ 4, 6. Two years after February 2011 is February 2013. So, according to Sullivan, he knew that he was ineligible for day-for-day credit in February 2013.

Sullivan admits that he knew the factual basis of his claim by February 2013. So, under his version of the events, the clock started ticking in February 2013.

Fifteen months later, on May 16, 2014, the clock stopped ticking when Sullivan filed his postconviction petition. *See* 5/16/14 *Pro Se* Postconviction Petition (Dckt. No. 16-2). A total of 447 days passed from February 23, 2013 (when Sullivan knew about his ineligibility) to May 16, 2014 (when he filed his postconviction petition).

That's more than one year. And then, the clock started ticking again when the Supreme Court of Illinois denied the petition on January 26, 2022. *See Sullivan*, 184 N.E.3d at 1003. It continued to tick until Sullivan filed his habeas petition on October 6, 2022. That's another 253 days. Putting it all together, that's more than a year, and then some.

All told, Sullivan's petition is late, even if the clock started ticking when he learned the factual basis of the claim. However you slice it, the habeas petition is late.

**C.     Tolling.**

The last potential issue is equitable tolling. In "exceptional" cases, courts equitably toll the one-year statute of limitations. *See Conner v. Reagle*, 82 F.4th 542, 550 (7th Cir. 2023).

The standard is high. The petitioner must show that: (1) "he has been pursuing his rights diligently," and (2) some extraordinary circumstance "prevented him from meeting the filing deadline." *Id.*

Sullivan does not argue that the limitations period should be tolled. *See* Resp. (Dckt. Nos. 22–23). And this Court does not see anything in the record that supports equitable tolling.

18

**Conclusion**

The Court grants the Warden's motion to dismiss. Sullivan's petition for a writ of habeas corpus is dismissed with prejudice because every claim is late.

This Court must also decide whether to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"). This Court can only issue a certificate of appealability if the petitioner "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2).

"[T]here is no substantial argument" that Sullivan's "petition is timely." *See Davis. v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003). So, it would be "inappropriate to issue a certificate." *See id.* ("[I]t is pointless to brief the merits when the statute of limitations halts the proceedings at the threshold."). The Court denies a certificate of appealability.

Date: January 25, 2024

　　　　　　　　　　　　　　　　　　　　Steven C. Seeger
　　　　　　　　　　　　　　　　　　　　United States District Judge